**BUCHALTER**
A Professional Corporation
Gary A. Wolensky (SBN: 154041)
J. Rick Taché (SBN: 195100)
Roger L. Scott (SBN: 247165)
18400 Von Karman Avenue, Suite 800
Irvine, CA 92612-0514
Telephone: 949.760.1121
Facsimile: 949.720.0182
Email:    gwolensky@buchalter.com
          rtache@buchalter.com
          rscott@buchalter.com

**SNELL & WILMER LLP**
Deborah S. Mallgrave (SBN 198603)
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
Telephone: 714.427.7000
Facsimile: 714.427.7799
Email:    dmallgrave@swlaw.com

Attorneys for Plaintiff
Whitewater West Industries, Ltd.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., a Canadian corporation,<br><br>                    Plaintiff,<br><br>          vs.<br><br>RICHARD ALLESHOUSE, an individual, YONG YEH, an individual, and PACIFIC SURF DESIGNS, INC., a Delaware corporation,<br><br>                    Defendants. | Case No. 3:17-CV-00501-DMS-NLS<br><br>**PLAINTIFF WHITEWATER WEST INDUSTRIES, LTD.'S NOTICE OF MOTION AND MOTION FOR ATTORNEY'S FEES; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:      May 31, 2019<br>Time:      1:30 p.m.<br>Ctrm:      13A |

**TO THE COURT, THE PARTIES, AND THEIR COUNSEL OF RECORD, PLEASE TAKE NOTICE** that Plaintiff Whitewater West Industries, Ltd. ("Whitewater") hereby respectfully moves this Court for an Order awarding $1,826,246.50 in attorney's fees against Defendants pursuant to Federal Rule of Civil Procedure 54(d)(2), and this Court's Findings of Fact and Conclusions of Law.  ECF No. 166 at 24:14-15.

This motion is based on the concurrently filed Memorandum of Points and Authorities, the Declaration of J. Rick Taché, all pleadings, papers, and records on file herein and upon such evidence and argument as the Court may allow at the time of hearing.


DATED:  April 18, 2019          BUCHALTER
                                A Professional Corporation


                                By:  /s/Roger L. Scott
                                     Gary A. Wolensky
                                     J. Rick Taché
                                     Roger L. Scott
                                     Attorneys for Plaintiff
                                     Whitewater West Industries, Ltd.


DATED:  April 18, 2019          SNELL & WILMER, LLP


                                By:  /s/Deborah S. Mallgrave
                                     Debora S. Mallgrave
                                     Attorneys for Plaintiff
                                     Whitewater West Industries, Ltd.

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................... 1

II.    ARGUMENT ...................................................................................... 2

    A.    Whitewater Is Entitled To Recover Its Attorney's Fees ...................... 2

          1.    Whitewater is the prevailing party ............................ 2

          2.    Whitewater is entitled to recover fees for all of its claims ........ 3

    B.    The Fees Requested Are Reasonable .................................................. 5

          1.    Work performed ......................................................... 5

          2.    Whitewater is unilaterally reducing a substantial portion of the total fees requested ............................................. 9

          3.    Defendants' strategy significantly increased the hours Whitewater was required to expend ......................... 11

          4.    The rates charged are objectively reasonable and consistent with industry rates ....................................... 14

    C.    Whitewater Is Entitled To Recover All Of Its Fees Without Apportionment Or Reduction ............................................................ 21

          1.    Whitewater's unsuccessful claims were related to its successful claims ...................................................... 21

          2.    Whitewater's fees should not be reduced because it did not recover monetary damages ........................... 23

    D.    Whitewater Is Entitled To Attorney's Fees For This Motion ............. 24

    E.    Whitewater's Fees and Costs Are Recoverable Against Alleshouse and PSD ........................................................................................... 24

III.   CONCLUSION ............................................................................... 26

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

# TABLE OF AUTHORITIES

**Cases**

*Apex LLC v. Korusfood.com,*
  222 Cal. App. 4th 1010 (2013)...............................................................25

*Calvo Fisher & Jacob LLP v. Lujan,*
  234 Cal. App. 4th 608 (Cal. Ct. App. 2015) .........................................11

*Del Mar Seafoods Inc. v. Cohen,*
  No. C 07-02952 WHA, 2008 WL 11456258 (N.D. Cal. Dec. 22, 2008) ...........21

*Dhawliwal v. Singh,*
  No. CV F 13-0484 LJO SKO, 2013 WL 5477374 (E.D. Cal. Sept. 30,
  2013).................................................................................................2, 7

*Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.,*
  211 Cal. App. 4th 230 (2012)................................................................25

*Farmers Insurance Exchange v. Law Offices of Conrado Joe Sayas, Jr.,*
  250 F.3d 1234 (9th Cir. 2001).................................................................3

*Hensley v. Eckerhart,*
  461 U.S. 424 (1983) ...........................................................21, 22, 23, 24

*In re Penrod,*
  802 F.3d 1084 (9th Cir. 2015).................................................................5

*In re Verbeck,*
  No. 16-40409 CN, 2017 WL 6389087 (Bankr. N.D. Cal. Dec. 13, 2017) ...........3

*Marsu, B.V. v. Walt Disney Co.,*
  185 F.3d 932 (9th Cir. 1999)...................................................4, 21, 23

*Martino v. Denevi,*
  182 Cal. App. 3d 553 (Cal. Ct. App. 1986) .............................................7

*Maynard v. BTI Grp., Inc.,*
  216 Cal. App. 4th 984 (2013).................................................................4

*Miske v. Coxeter,*
  204 Cal. App. 4th 1249 (2012)................................................................4

*Perkins v. New Orleans Athletic Club,*
  429 F. Supp. 661 (E.D. La. 1976) ........................................................11

*PLCM Grp. v. Drexel,*
  22 Cal. 4th 1084 (Cal. Ct. App. 2000) ....................................................5

*PSM Holding Corp. v. Nat'l Farm Fin. Corp.,*
  No. CV 05-8891-VBF(FMOX), 2008 WL 11434496 (C.D. Cal. Jan. 2,
  2008)..............................................................................................22, 23

*Reynolds Metals Co. v. Alperson,*
  25 Cal. 3d 124 (1979) ...................................................................................25

*Scott Co. of California v. Blount, Inc.,*
  20 Cal. 4th 1103 (Cal. 1999) .........................................................................3

*Serrano v. Unruh,*
  32 Cal. 3d 621 (Cal. 1982) ...........................................................................24

*Sorenson v. Mink,*
  239 F.3d 1140 (9th Cir. 2001) ...............................................................23, 24

*Steiny & Co. v. California Elec. Supply Co.,*
  79 Cal. App. 4th 285 (Cal. Ct. App. 2000) ....................................................7

*Stonebrae, L.P. v. Toll Bros.,*
  No. C-08-0221-EMC, 2011 WL 1334444 (N.D. Cal. Apr. 7, 2011) .................24

*Thompson v. Miller,*
  112 Cal. App. 4th 327 (2003) .........................................................................4

**Statutory Authorities**

35 U.S.C. § 256 ................................................................................................5

Cal. Bus. & Prof. Code 16600 ......................................................................6, 7

Cal. Civ. Code § 1717 ...............................................................................3, 24, 25

Cal. Civ. Code § 1717(a) ..................................................................................2

Cal. Code of Civ. P. § 1021 ............................................................................24

Cal. Code of Civ. P. § 1033.5 ...........................................................................2

Cal. Lab. Code §§ 2870, 2872 .........................................................................6

**Rules and Regulations**

Local Rule 5.4 ................................................................................................27

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

# I.     **INTRODUCTION**

Plaintiff Whitewater West Industries, Ltd. ("Whitewater") pursued this case because Defendants Richard Alleshouse ("Alleshouse") and Yong Yeh ("Yeh") founded their company, Defendant Pacific Surf Designs, Inc. ("PSD") on ride designs and technology stolen from Whitewater and its predecessor in interest, Wave Loch, LLC.  After nearly two years of litigation and four days of trial, the Court's Findings of Fact and Conclusions of Law adopted Whitewater's positions on each of Defendants' challenges to the validity of Alleshouse's employment contract, and found that "common sense" dictated that Alleshouse breached that contract by failing to assign these patents to Wave Loch.  The Court also found that Yeh made no inventive contribution to the patents although he claimed to have done so.  Accordingly, the Court awarded Whitewater full possession of the only three patents ever issued to PSD.

This was a hard fought victory for Whitewater.  For example, Defendnants repeatedly resisted Whitewater's efforts to obtain critical discovery in the form of emails between Alleshouse and Yeh.  This intransigence required Whitewater to file two motions to compel and a motion to extend discovery to obtain a complete production.  Defendants' belated production added further expense because it required Alleshouse and Yeh to be deposed a second time regarding the previously withheld emails.  Whitewater presented many of these emails at trial, which were cited by the Court in its Findings as evidence of Alleshouse's breach.

Under California law and the express language of Alleshouse's employment agreement, Whitewater, as the prevailing party, is entitled to recover its attorney's fees and costs.[1]  Moreover, because each of Whitewater's claims was directly related to its breach of contract claim, it is also entitled to recover attorney's fees

---

[1] Whitewater is filing a bill of costs concurrently herewith.  Whitewater has interpreted the Agreement and relevant case law as not authorizing the recovery of expert witness fees. .  However, if the Court deems it appropriate to include such fees (totaling $148,701.58) in the amount to be awarded, then Whitewater will make supporting documents available to the Court.

and costs for these related claims, whether or not Whitewater was successful on every claim.

Whitewater's lodestar—the reasonable number of hours spent multiplied by the reasonable hourly rate for each attorney paralegal, and others claiming time on this case—is $2,029,362.30.  Nevertheless, Whitewater has reviewed its fees incurred and unilaterally reduced the request by $203,115.80, bringing the total fee request down to $1,826,246.50.

## II.    ARGUMENT

### A.    Whitewater Is Entitled To Recover Its Attorney's Fees

#### 1.    Whitewater is the prevailing party

Alleshouse's Covenant Against Disclosure and Covenant Not to Compete (the "Agreement," Trial Ex. 6) provides that, "[i]f any legal action or other proceeding . . . is brought for the enforcement of the Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement, the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled." Agreement ¶ 9.  The Agreement also provides that it "shall be binding upon Employee's heirs, executors, administrators, or other legal representatives or assigns." *Id*. ¶ 10(c).

"In a federal action, state law is relevant to assess 'whether the contractual attorney's fee obligation was valid and enforceable.'  '***State law controls both the award of and the reasonableness of fees awarded*** where state law supplies the rule of decision.' " *Dhawliwal v. Singh*, No. CV F 13-0484 LJO SKO, 2013 WL 5477374, at *3 (E.D. Cal. Sept. 30, 2013) (emphasis added; citations omitted).

The Agreement is governed by California law.  Agreement ¶ 10(e).  California law provides that attorney's fees authorized by a contract are a cost recoverable by the prevailing party.  Cal. Code of Civ. P. § 1033.5(a)(10); Cal. Civ.

Code § 1717(a) ("Reasonable attorney's fees shall be fixed by the court, and shall be an element of the costs in suit."). California Civil Code section 1717 provides for an award of attorney's fees where "the parties contractually obligate themselves" to so compensate each other. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001); Cal. Civ. Code § 1717.

By obtaining a substantial award on its breach of contract and declaratory relief claims, Whitewater is the prevailing party. *Scott Co. of Cal. v. Blount, Inc.*, 20 Cal. 4th 1103, 1109 (Cal. 1999) ("When a party obtains a simple, unqualified victory . . . and the contract contains a provision for attorney fees, section 1717 entitles the successful party to recover reasonable attorney fees incurred in prosecution or defense of those claims."). Accordingly, pursuant to Civil Code section 1717 and the terms of the Agreement, Whitewater is "entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled." Agreement ¶ 9.

## 2. Whitewater is entitled to recover fees for all of its claims

In addition to recovering on its contract claims, California law expressly permits the recovery of attorney's fees on tort and statutory claims when a contact includes language that encompasses those claims. *In re Verbeck*, No. 16-40409 CN, 2017 WL 6389087, at *4 (Bankr. N.D. Cal. Dec. 13, 2017) ("Under [California Code of Civil Procedure] § 1021, parties may contract for the recovery of attorney's fees regardless of whether such litigation is premised on contract claims, tort claims, statutory claims, or otherwise, so long as the fee clause is sufficiently broad to encompass such claims" and listing cases).

The Agreement provides for prevailing party attorney's fees in "***any legal action*** . . . brought for the enforcement of the Agreement, or ***because of an alleged dispute***, breach, default, or misrepresentation ***in connection with any of the provisions of this Agreement***." Agreement ¶ 9 (emphasis added). This is exactly

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

the sort of broad language that permits recovery of attorney's fees for tort and statutory claims. *Marsu, B.V. v. Walt Disney Co.*, 185 F.3d 932, 939 (9th Cir. 1999) (upholding award of attorney's fees on contract and tort claims where contract provided recovery of prevailing party fees for "*[a]ny dispute, difference, claim or counterclaim between the parties arising out of or in connection with this agreement* shall be submitted to state or federal court" (emphasis in original)).[2]

Each of Whitewater's claims constituted a "legal action . . . because of an alleged dispute . . . in connection with" a provision of the Agreement.  Specifically, the requirement that Alleshouse assign all inventions "resulting from or suggested by Employee's work for the Company," to Wave Loch, and therefore to Whitewater.  Agreement ¶ 2(a).  Because Alleshouse assigned his rights to PSD and because he and Yeh falsely claimed that Yeh co-created the inventions, Whitewater was forced to file additional claims against PSD and Yeh to obtain the relief sought under the Agreement; namely a complete assignment of the patents to Whitewater. As Defendants have noted, the only basis for Whitewater's claims against any of the Defendants was that it was the proper successor to the Agreement.  ECF No. 21-1 at 6:23-24 ("all of Plaintiff's claims are predicated on the Plaintiff having rights under the Non-Compete Agreement").  Further, to obtain complete relief, Whitewater was required to demonstrate that Yeh was not a properly named co-inventor.  Otherwise, as Defendants admit, Yeh (and therefore PSD) would have retained an undivided half-interest in the patents.  ECF No. 86 at 25:11-18 ("if Mr. Yeh was properly named as a joint inventor on any of the patents-in-suit, he was not required to assign his half-interest in such patent(s) to Plaintiff—even if Mr.

---

[2] See also *Maynard v. BTI Grp., Inc.*, 216 Cal. App. 4th 984, 993 (2013) (affirming attorney's fees award on tort claim under contract providing for prevailing party fees for "any dispute" under the agreement); *Miske v. Coxeter*, 204 Cal. App. 4th 1249, 1259 (2012) ("where the language of the agreement broadly applies to ' "any dispute" ' under it, the attorney fee clause encompasses any conflict concerning the effect of the agreement, including a tort claim."); *Thompson v. Miller*, 112 Cal. App. 4th 327, 336-337 (2003) (reversing trial court and ordering award of fees on contract and tort claims where contract provided for recovery of fees on "any dispute under this agreement").

Alleshouse were required to assign his half-interest").  The only possible source of Whitewater's right to assert inventorship claims against Yeh was that Whitewater properly held an interest in the patents under the Agreement.  *See*, 35 U.S.C. § 256 (correction of inventorship may be asserted only by a patent's "parties and assignees"); *In re Penrod*, 802 F.3d 1084, 1088 (9th Cir. 2015) (action is "on the contract" where "[t]he only possible source of that asserted right [to object] was the contract.").  Thus, the Agreement's attorney's fees provision encompasses all of Whitewater's claims.

### B.    The Fees Requested Are Reasonable

"'[T]he fee setting inquiry in California ordinarily begins with the "lodestar," i.e. the number of hours reasonably expended multiplied by the reasonable hourly rate.'"  *PLCM Grp. v. Drexel*, 22 Cal. 4th 1084, 1095 (Cal. Ct. App. 2000) (citations omitted).  These issues are addressed below.

### 1.    Work performed

The four-day trial was the culmination of a substantial litigation effort over the course of nearly two years.  In prevailing in this lawsuit, Whitewater incurred attorney's fees and costs principally in connection with the following activities:

a.  Preparing the complaint, including review an analysis of the Agreement, case facts and issues.[3]

b.  Successfully opposing Defendants' motion to dismiss.

c.  Preparing initial disclosures, reviewing Defendants' initial disclosures, and addressing various issues related to the Scheduling Order.

d.  Propounding two sets of interrogatories to Defendants.

e.  Responding to one set of interrogatories from Defendants, including supplemental responses.

---

[3] Whitewater began to research and draft the complaint in December 2016, but delayed filing the complaint until March 13, 2017, when the final patent had issued.

f.  Propounding three sets of requests for production of documents to Defendants, including 62 requests.

g.  Responding to one set of requests for production of documents from Defendants, including 38 requests.

h.  Engaging in extensive meet and confer efforts regarding Defendants' refusal to produce emails between Alleshouse and Yeh and other issues.

i.  Drafting and filing two motions to compel and a motion to extend discovery based on Defendants' refusal to produce critical emails.

j.  Researching and preparing internal legal memoranda regarding Defendants' legal challenges to the Agreement including Labor Code sections 2870, 2872, and Business and Professions Code 16600.

k.  Obtaining and reviewing over 1,338 documents, totaling over 4,728 pages from Defendants.

l.  Gathering, reviewing, and producing over 3,922 documents, totaling over 10,312 pages from Whitewater and Wave Loch, in response to Defendants discovery requests, including CAD and other drawing files that required specialized software to access and review.

m. Defending the deposition of Thomas Lochtefeld, individually and as the Rule 30(b)(6) representative of Wave Loch, Inc. and Wave Loch, LLC.

n.  Defending the deposition of Marshall Myrman, Whitewater's Rule 30(b)(6) representative.

o.  Preparing for and taking the depositions of Alleshouse and Yeh.

p.  Preparing for and taking the *second* depositions of Alleshouse and Yeh following Defendants' compelled production of additional emails.

q.  Deposing Defendants' experts Manuel de la Cerra and Justin Lewis.

r.  Defending the depositions of Whitewater's experts Glen Stevick and Robert Vigil.

s.  Successfully opposing Defendants' motion for summary judgment.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

t.  Successfully opposing Defendants' two *Daubert* motions.

u.  Successfully opposing Defendants' three motions *in limine*.

v.  Preparing witness lists, exhibit list, and exhibits in hard-copy and electronic formats.  Reconciling competing exhibit lists to create a joint exhibit list.

w.  Preparing direct examination outlines for Whitewater's four witnesses, Geoff Chutter, Marshall Myrman, Andrew Thatcher, and Thomas Lochtefeld, and two experts Glen Stevick and Robert Vigil.

x.  Preparing direct examination outlines for adverse witnesses Richard Alleshouse and Yong Yeh.

y.  Preparing cross-examination outlines for Defendants' expert witnesses Manuel de la Cerra and Justin Lewis.

z.  Preparing for and conducting a four-day trial.

Tache Decl. ¶ 2.

The hours incurred for each of these tasks are well documented and based on contemporaneous records for each timekeeper.  *Id.* ¶ 3.  The declaration from Whitewater's counsel in support of its fee request is more than sufficient for an award of attorney's fees.  *See Steiny & Co. v. Cal. Elec. Supply Co.*, 79 Cal. App. 4th 285, 293 (Cal. Ct. App. 2000) (holding "there is no legal requirement that [billing] statements be offered in evidence.  An attorney's testimony as to the number of hours worked is sufficient to support an award of attorney fees, even in the absence of detailed time records."); *Martino v. Denevi*, 182 Cal. App. 3d 553, 559 (Cal. Ct. App. 1986) ("In California, an attorney need not submit contemporaneous time records in order to recover attorney fees . . .  Testimony of an attorney as to the number of hours worked on a particular case is sufficient evidence to support an award of attorney fees . . .").[4]  Nevertheless, individual time summaries can be made available at the Court's request, though redactions may be

---

[4] "State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision."  *Dhawliwal*, 2013 WL 5477374, at *3 (citations omitted).

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

necessary to protect privileged information.

For all of the foregoing tasks, as well as the tasks of communicating with opposing counsel and with clients, Whitewater incurred the following fees, which are broken down by professional, hours spent, and average hourly rate charged.[5]

| Name (Position) | Hours | Avg. Rate | Total Fees |
|---|---|---|---|
| J. Rick Taché (Shareholder) | 722.4 | $786.66 | $568,280.25 |
| Jeff Scott (Shareholder, GT) | 11.7 | $928.85 | $10,867.50 |
| Gary Wolensky (Shareholder) | 233.6 | $509.16 | $118,940 |
| Kari Barnes (Shareholder) | 87.9 | $502.39 | $44,160 |
| Deborah Mallgrave (Of Counsel, Snell) | 139.0 | $491.38 | $68,301.45 |
| Roger Scott (Senior Counsel) | 843.9 | $530.16 | $500,419.05 |
| Erikson Squier (Senior Counsel) | 497.3 | $530.96 | $264,045.50 |
| Leanna Costantini (Associate, GT) | 129.8 | $480.66 | $62,389.50 |
| Christina Trinh (Associate) | 593.1 | $318.11 | $188,669.50 |
| Alexis Kovacs (Paralegal, GT) | 30.9 | $375.84 | $11,613.50 |
| Branda Lin (Paralegal) | 372.4 | $250.00 | $93,100.00 |
| Kevin Parker (litigation project manager) | 70.1 | $175.00 | $12,267.50 |
| Other GT attorneys and staff | | | $6,648.50 |
| Other attorneys and staff | | | $79,660.05 |
| **Total** | | | **$2,029,362.30** |

Taché Decl. ¶ 4.

---

[5] During the first quarter of 2018, Messrs. Taché, Scott, and Squier transitioned their practice from Greenberg Traurig ("GT") to Buchalter.  Taché Decl. ¶ 8 As part of this transition, Messrs. Taché, Scott, and Squier each reduced his respective billing rate.  *Id.*  This transition to Buchalter also required the reconstitution of the remaining attorneys and the paralegal assigned to assist with this lawsuit.  *Id.*

8

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

**2.     Whitewater is unilaterally reducing a substantial portion of the total fees requested**

In preparing this motion, Whitewater reviewed the detailed billing records from pre-filing preparations beginning in December 2016 (Whitewater delayed filing of the matter until the PTO issued the last of the three patents in March 2017) through March 31, 2019.  Taché Decl. ¶ 5.  As part of that review, Whitewater identified potential inefficiencies, and is reducing the fees request accordingly to ensure that the request is reasonable.  *Id*. at ¶ 6.

J. Rick Taché has been Whitewater's principal counsel for most of the last decade.  Taché Decl. ¶ 7.  Mr. Taché is an intellectual property attorney with expertise in practice before the United States Patent and Trademark Office.  *Id*.  Thus, Mr. Taché not only supervised the litigation, but also was intimately involved with the legal strategy behind Whitewater's successful effort to enforce the Alleshouse employment agreement and remove Yeh as a claimed co-inventor of the patents at issue in this case.  *Id*.

Over the course of the litigation, Mr. Taché's average hourly billing rate was $786.66 for this matter.  Taché Decl. ¶ 9.  While Whitewater believes that this rate is reasonable, on May 18 2017, another court in this District found $750.00 to be a reasonable rate for Mr. Taché when it imposed sanctions on PSD in separate litigation between the parties.  See ECF No. 217 in *Flowrider Surf, Ltd., et al v. Pacific Surf Designs, Inc.*, No. 15-cv-01879-BEN-BLM (the "*Flowrider* Sanctions Order").  To avoid any dispute, Whitewater is unilaterally reducing Mr. Taché's rate to $750.00 for all hours worked.  This represents a unilateral reduction of **$26,480.25** in Mr. Taché's billed fees.

Similarly, Leanna Costantini worked as an associate on this case at GT.  Taché Decl. ¶ 10.  Ms. Costantini did not move to Buchalter with other members of Whitewater's litigation team.  *Id*.  Ms. Costantini performed significant and valuable work in the early stages of this litigation including preparing the complaint

and conducting research in opposition to Defendants' unsuccessful motion to dismiss. *Id.* Ms. Costantini's average billing rate was $480.66. *Id.* Whitewater believes that this rate is reasonable given Ms. Costantini's work and skill level outlined below. However, in the *Flowrider* Sanctions Order, the court found a reasonable rate for Ms. Costantini's work to be $350.00 per hour. To avoid any dispute regarding the reasonableness of Ms. Costantini's rate, Whitewater is unilaterally reducing Ms. Costantini's rate for this matter to $350.00 per hour, representing a discount of **$16,959.50**.

At GT, other attorneys and staff participated in this case who did not move to Buchalter including Jeff Scott and Alexis Kovacs. Their roles were replaced with new attorneys and staff when Mr. Taché and others moved to Buchalter. Whitewater recognizes the inefficiencies in removing and/or replacing team-members during the course of litigation. As a result, Whitewater has unilaterally elected not to seek recovery of the fees incurred by Jeff Scott, Ms. Kovacs, and other GT attorneys and staff, thereby reducing the overall request by $**29,129.50**.

At Buchalter, Whitewater engaged Gary Wolensky as trial counsel. Mr. Wolensky has tried more than 100 cases before juries and many others as bench trials or before arbitrators. While Mr. Wolensky provided valuable trial expertise, Whitewater recognizes the inefficiencies that can occur when a new attorney must learn the facts and circumstances of a case with which he is unfamiliar. As a result, Whitewater is unilaterally reducing the number of hours Mr. Wolensky billed to this case by 10%, resulting in a corresponding reduction of **$11,894.00** in fees billed for Mr. Wolensky's work on this matter.

Moreover, Whitewater has unilaterally reduced the hourly rate requested by its paralegal, Branda Lin. Ms. Lin's rate for this matter is $250.00 per hour. Ms. Lin's experience and qualifications are set forth below, and Whitewater firmly believes that Ms. Lin's $250.00 per hour rate is reasonable. To avoid any dispute, Whitewater is unilaterally reducing Ms. Lin's applicable rate to the $150.00 rate

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

found to be reasonable for paralegal time in the *Flowrider* Sanctions Order.  This results in a reduction of **$37,240.00**, or 40% of Ms. Lin's billed fees.  Whitewater is similarly reducing the rate of its litigation project manager, Kevin Parker, from $175.00 to $150.00, representing a **$1,752.50** reduction in Mr. Parker's billed fees.

Finally, several other attorneys, staff, and litigation support personnel have assisted in discrete projects.  While all of these tasks were necessary for the case, Whitewater recognizes that utilizing personnel not intimately familiar with the case can result in duplicative effort or cause other inefficiencies.  As a result, Whitewater has unilaterally decided not to request fees for this additional personnel, representing a further reduction of **$79,660.05**.

In total, after conducting the exhaustive review of the billing entries in this matter, Whitewater has unilaterally reduced the fees requested by **$203,115.80**, or 10%, bringing the total fee request down from $2,029,362.30 to **$1,826,246.50**.

### 3.    Defendants' strategy significantly increased the hours Whitewater was required to expend

The fees requested are particularly reasonable given that Defendants' litigation team mirrored Whitewater's team in size and experience and the overly contentious defense mounted by Defendants in this case.  As courts have noted, "[t]hose who elect a militant defense . . . [are responsible for] the time and effort the exact from their opponents." *Perkins v. New Orleans Athletic Club*, 429 F. Supp. 661, 667 (E.D. La. 1976).  In other words, "one 'cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.'" *Calvo Fisher & Jacob LLP v. Lujan*, 234 Cal. App. 4th 608, 627 (Cal. Ct. App. 2015) (citation omitted); *Wolf v. Frank*, 555 F.2d 1213, 1217 ("Obviously, the more stubborn the opposition the more time would be required . . . ") (5th Cir. 1977).  Thus, Defendants cannot now complain about the fees Whitewater incurred as a direct result of Defendants' litigation strategy; examples of which are discussed below.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

Throughout the litigation, Defendants repeatedly refused to produce emails between Alleshouse and Yeh regarding the founding of PSD and the conception of the inventions disclosed and claimed in the subject patents. Taché Decl. ¶ 16. After agreeing in writing to produce responsive emails, Defendants reversed course, forcing Whitewater to file a motion to compel. ECF No. 41. The Court granted Whitewater's motion and chastised Defendants stating, "the Court cannot condone the manner in which Defendants conducted discovery in this instance . . . Defendants agreed to produce email communications . . . but failed to follow through on these assurances. The Court expects that counsel, acting as officers of the court, will follow through on the representations they make to opposing counsel, particularly in light of opposing counsel's good faith reliance on such statements." ECF No. 43 at 5:16-22.

Despite the Court's order, Defendants refused to produce all of the responsive emails. Taché Decl. ¶ 17. Whitewater was again forced to seek Court intervention, this time in the form of an extension of the scheduling order to force Defendants to comply. ECF No. 44. In opposing Whitewater's request, Defendants unilaterally attempted to narrow the scope of their promised production to documents "relating to the inventorship of the three [PSD] patents" as opposed to *all* of the responsive communications Defendants had promised to—and been ordered to—produce. ECF No. 53 at 2:4-7. The Court granted Whitewater's motion to extend and rejected Defendants' improper efforts to limit the scope of discovery. ECF No. 55.

In response, Defendants produced some additional emails, but Yeh admitted at deposition that the production was still incomplete, forcing Whitewater to file yet another motion to compel. ECF No. 64. In opposition, Yeh claimed "confusion" as to the scope of his testimony at deposition and asserted that all documents had been produced. ECF No. 69-1, ¶¶ 7-9. In support of this contention, Defendants produced a "search log" listing emails between Yeh and Alleshouse which included

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

numerous responsive emails that had not been produced, including emails between Alleshouse and Yeh during the critical period *before* Alleshouse left Wave Loch and the first few days and weeks after they founded Pacifc Surf Designs.  ECF No. 64-4.  Defendants attempted to avoid production by claiming these documents were merely "administrative" or "ministerial" and were not relevant.  ECF No. 64 at 14:4-7, 21:22-24.  The Court disagreed and ordered production.  ECF No. 70.

Each of Whitewater's motions yielded additional production from Defendants of emails between Alleshouse and Yeh that were used as exhibits at trial.  *See*, *e.g.*, ECF No. 159, Exs. 19, 23, 27, 29, 93.  Further, because Defendants' final production was made after Alleshouse and Yeh's depositions, Whitewater was forced to reopen these depositions.  Taché Decl. ¶ 18.

Another example of Defendants' intransigence causing Whitewater to expend additional fees is the retention of Deborah Mallgrave of Snell & Wilmer. Defendants' damages expert, Justin Lewis, who is employed by the firm Ocean Tomo.  As part of Mr. Taché's transition to Buchalter, a potential, but waiveable, conflict arose because Buchalter represented Whitewater in this matter and Ocean Tomo in an unrelated matter.  Taché Decl. ¶ 19.  Buchalter imposed an ethical screen to avoid the transfer of any information between the Whitewater and Ocean Tomo teams at Buchalter.  *Id.*  Whitewater agreed to waive any conflict.  *Id.*  Ocean Tomo also agreed to waive any conflict, provided that Defendants consented to Buchalter representing Ocean Tomo in the unrelated matter while Whitewater's counsel challenged Mr. Lewis's opinions.  *Id* .  Consenting would have imposed no hardship or prejudice on Defendants.  Defendants refused to consent, forcing Whitewater to retain Ms. Mallgrave as conflicts counsel for the sole purpose of questioning Mr. Lewis at deposition and trial.  *Id.*

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

4.     **The rates charged are objectively reasonable and consistent with industry rates**

In May 2017, the *Flowrider* Sanctions Order determined the reasonable hourly rates of Whitewater's counsel in another action against PSD.  Specifically, the *Flowrider* Sanctions Order found $750 per hour to be a reasonable rate for Mr. Taché, $550 to be a reasonable rate for Mr. Scott, $350 to be a reasonable rate for Ms. Costantini (then a mid-level associate), and $150 to be a reasonable rate for Whitewater's paralegal, Alexis Kovacs.  *Flowrider* Sanctions Order at 8:6-9.

To avoid any dispute over the reasonableness of rates, Whitewater adopts the Court's prior determinations.  While certain staffing has changed, Whitewater has endeavored to apply rates consistent with the rates previously awarded.  Since another court in this District determined these rates to be reasonable two years ago, Defendants cannot contest the application of the same or lesser rates in this case.

### J. Rick Taché

J. Rick Taché is a Shareholder at Buchalter and firm-wide Co-Chair of its Intellectual Property Group.  Mr. Taché has more than 30 years of experience. Taché Decl. ¶ 20.  Mr. Taché is a registered patent attorney focusing his practice on intellectual property law.  *Id*.  A more complete listing of Mr. Taché's qualifications can be found in his accompanying declaration.  *See*, *Id*.

Through March 31, 2019, Mr. Taché billed 722.4 hours of his time to this case.  Taché Decl. ¶ 21.  All of Mr. Taché's billed work was necessary to the case. *Id*.  Mr. Taché worked on every aspect of the case, including conducting the examination of Whitewater's expert, Dr. Glen Stevick at trial and presenting closing argument, supervising the other professionals on the case, and managing all aspects of the case as it progressed to trial.  *Id*.  The total amount billed for this work was $527,077.50, which equates to an average rate of $786.66 per hour.  *Id*. Although Whitewater believes that $786.66 is a reasonable rate for Mr. Taché's work, as explained above, to avoid any dispute regarding his rate, Whitewater

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

14

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

reduced his rate to $750.00 per hour, consistent with the May 2017 *Flowrider* Sanctions Order.

### Gary Wolensky

Gary Wolensky is a litigation Shareholder at Buchalter.  Taché Decl., ¶ 22. Mr. Wolensky has more than 40 years of experience as a litigator, and focuses his practice on commercial litigation.  *Id*.  Mr. Wolensky has taken more than 100 cases through jury trial, and dozens of other cases through bench trials or arbitration.  *Id*.  A more complete listing of Mr. Wolensky's qualifications can be found in Mr. Taché's declaration.  *See*, *Id*.

Through March 31, 2019, Mr. Wolensky billed 233.6 hours of his time to this case.  Taché Decl. ¶ 23.  All of Mr. Wolensky's billed work was necessary to the case.  *Id*.  Mr. Wolensky joined Whitewater's counsel team specifically to assist with trial strategy and try the case.  Mr. Wolensky prepared witnesses for trial, presented opening and closing arguments, and conducted the examinations of Whitewater's CEO, Geoff Chutter, as well as Alleshouse and Yeh.  *Id*.  The total amount billed for this work was $118,940.00, which equates to an average rate of $509.16 per hour.[6]  *Id*.  Mr. Wolensky's $509.16 rate is reasonable given that the *Flowrider* Sanctions Order found $750.00 per hour to be a reasonable rate for Mr. Taché who has commensurate years of experience.

### Kari Barnes

Kari Barnes is an intellectual property Shareholder at Buchalter.  Taché Decl., ¶ 24.  Ms. Barnes has more than 15 years of experience assisting in intellectual property matters and more than 10 years as an intellectual property attorney.  *Id*.  As a registered patent attorney, she has represented companies and individuals in civil litigation in federal courts.  *Id*.  A more complete listing of Ms. Barnes's qualifications can be found in Mr. Taché's declaration.  *See*, *Id*.

---

[6] As explained above, Whitewater unilaterally reduced Mr. Wolensky's hours billed, and therefore the total fees requested for his work, by 10%.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

15

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

Through March 31, 2019, Whitewater incurred attorney's fees for 87.9 hours of Ms. Barnes's work on this case. Taché Decl. ¶ 25. Ms. Barnes investigated the file histories, claims, and disclosures for each of the three patents-in-suit, prepared witness outlines for Whitewater's technical expert, and worked on the numerous motions, oppositions, and reply papers in this case. *Id.* The total amount billed for this work was $44,160.00, which equates to an average rate of $502.39 per hour. *Id.* Given that the *Flowrider* Sanctions Order found $550.00 per hour to be a reasonable rate for Mr. Scott, who has less experience than Ms. Barnes, Defendants cannot contest the reasonableness of Ms. Barnes's $502.39 rate.

### Roger Scott

Roger Scott is a litigation Senior Counsel at Buchalter. Taché Decl. ¶ 26. Mr. Scott has more than 12 years of experience. *Id.* He has represented companies and individuals in civil litigation in federal and state courts and arbitration, and has argued before the United States Court of Appeals for the Ninth Circuit. *Id.* A more complete listing of Mr. Scott's qualifications can be found in Mr. Taché's declaration. *See*, *Id.*

Through March 31, 2019, Whitewater incurred attorney's fees for 943.9 hours of Mr. Scott's work on this case. Taché Decl. ¶ 27. Mr. Scott was the lead associate on this case and was involved in all aspects of the case from preparation of the complaint, through discovery, taking and defending depositions (including taking the depositions of Messrs. Alleshouse and Yeh), motion practice, and presentation at trial including the examinations of Marshall Myrman, Andrew Thatcher, and Defendants' expert Manuel de la Cerra, and presentation of closing argument. *Id.* The total amount billed for this work was $500,419.05, which equates to an average hourly rate of $530.16. *Id.* The *Flowrider* Sanctions Order found $550.00 per hour to be a reasonable rate for Mr. Scott's work. Defendants cannot therefore contest the reasonableness of the $530.16 rate claimed here.

### Erikson Squier

Erikson C. Squier is a Senior Counsel at Buchalter specializing in intellectual property, including patent prosecution and litigation. Taché Decl., ¶ 28. Mr. Squier has more than eight years of experience. *Id*. He has represented companies in civil litigation in Federal Courts and before both the United States Patent and Trademark Office ("USPTO") and the Patent Trial and Appeal Board. *Id*. A more complete listing of Mr. Squier's qualifications can be found in Mr. Taché's declaration. *See*, *Id*.

Through March 31, 2019, Whitewater incurred attorney's fees for 497.3 hours of Mr. Squier's work on this case. Taché Decl., ¶ 29. Among other things, Mr. Squier reviewed voluminous documents in production, investigated the file histories, claims, and disclosures for each of the three patents-in-suit, prepared for, defended, and conducted depositions, worked with Whitewater's damages and technical experts, and prepared witnesses to testify at trial. *Id*. He also worked on the numerous motions, oppositions, and reply papers in this case. *Id*. The total amount billed for this work was $264,045.50, which equates to an average hourly rate of $530.96. *Id*. Given that the *Flowrider* Sanctions Order found $550.00 per hour to be a reasonable rate for Mr. Scott, who has slightly more experience to Mr. Squier, but lacks Mr. Squier's expertise in patent law, his $530.96 rate is reasonable.

### Deborah Mallgrave

Deborah Mallgrave is Of Counsel with Snell & Wilmer, practicing for more than 20 years. Taché Decl., ¶ 30. She has represented companies and individuals in civil litigation in federal and state courts including trial and arbitration. *Id*. A more complete listing of Ms. Mallgrave's qualifications can be found in Mr. Taché's declaration. *See*, *Id*.

Through March 31, 2019, Whitewater incurred attorney's fees for 139.0 hours of Ms. Mallgrave's work on this case. Taché Decl., ¶ 31. As explained above, Whitewater retained Ms. Mallgrave after Defendants' refusal to waive a

potential conflict related to their expert, Justin Lewis's employer, Ocean Tomo, despite both Ocean Tomo and Whitewater agreeing to waive the conflict.  Ms. Mallgrave prepared for and took the deposition of Mr. Lewis and examined Mr. Lewis at trial.  *Id*.  In addition, Ms. Mallgrave also prepared Whitewater's damages expert, Robert Vigil, for his trial testimony and examined Dr. Vigil at trial.  *Id*.  The total amount billed for this work was $68,308.55, which equates to an average hourly rate of $491.38.  *Id*.  Ms. Mallgrave's $491.38 rate is reasonable given that the *Flowrider* Sanctions Order found $550.00 per hour to be a reasonable rate for a less experienced attorney.

### Leanna Costantini

At the time Ms. Costantini performed work in this matter, she was a litigation associate at GT with more than four years of experience representing companies and individuals in civil litigation in federal and state courts including at trial and arbitration.  Taché Decl. ¶ 32.  A more complete listing of Ms. Costantini's qualifications can be found in Mr. Taché's declaration.  *Id*.  Ms. Costantini was the primary associate on this case.  *Id*.

Through March 31, 2019, Whitewater incurred attorney's fees for 129.8 hours of Ms. Costantini's work on this case.  Taché Decl. ¶ 33.  Among other things, Ms. Costantini performed legal research, assisted in drafting the complaint and first amended complaint, and opposing Defendants' unsuccessful motion to dismiss.  The total amount billed for this work was $62,389.50, which equates to an average hourly rate of $480.66.  *Id*.  Although Whitewater believes that $480.66 is a reasonable rate for Ms. Costantini's work, as explained above, to avoid any dispute regarding the reasonableness of Ms. Costantini's rate, Whitewater unilaterally reduced her rate to $350.00 per hour to be consistent with the May 2017 *Flowrider* Sanctions Order.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

### Christina Trinh

Christina Trinh is an intellectual property litigation associate at Buchalter. Taché Decl., ¶ 34.  Ms. Trinh has more than four years of experience.  *Id*.  She has represented companies, individuals, and public entities in civil litigation in federal and state courts including at mediation.  *Id*.  In 2015, Ms. Trinh worked as a judicial extern for the Patent Pilot Program in the United States District Court for the Central District of California.  *Id*.  A more complete listing of Ms. Trinh's qualifications can be found in Mr. Taché's declaration.  *See*, *Id*.

Through March 31, 2019, Whitewater incurred attorney's fees for 593.1 hours of Ms. Trinh's work on this case.  Taché Decl. ¶ 35.  Among other things, Ms. Trinh performed legal research, reviewed voluminous document productions, prepared outlines for depositions and trial, and prepared trial exhibits.  *Id*.  She also worked on motions, oppositions, and reply papers on discovery motions, *ex parte* applications, *Daubert* motions, and motions *in limine*.  *Id*.  The total amount billed for this work was $188,669.50, which equates to an average hourly rate of $318.11. *Id*.  Ms. Trinh's rate is reasonable given that the *Flowrider* Sanctions Order found $350.00 per hour to be a reasonable rate for Ms. Costantini, who, at the time that order was entered, had the same level of experience as Ms. Trinh possesses.

### Branda Lin

Branda Lin is a litigation paralegal at Buchalter, A Professional Corporation. Taché Decl., ¶ 36.  Ms. Lin has more than 13 years of experience working as a paralegal.  *Id*.  Ms. Lin has been part of trial teams in matters ranging from breach of contract to patent infringement.  *Id*.  A more complete listing of Ms. Lin's qualifications can be found in Mr. Taché's declaration.  *See*, *Id*.

Through March 31, 2019, Whitewater incurred professional fees for 372.4 hours of Ms. Lin's time on this case.  Tache Decl., ¶ 37.  All of Ms. Lin's work was necessary to this case. Ms. Lin worked on document review and production, including substantial work on the exhibits and exhibit lists.  *Id*.  She also assisted

1   the attorneys with preparation for depositions, various motions, oppositions, and
2   reply briefs, including selection of exhibits from the database of documents. *Id*.
3   The total amount billed for this work was $93,100.00, which equates to an average
4   hourly rate of $250.00. *Id*. Although Whitewater believes that $250.00 is a
5   reasonable rate for Ms. Lin's work, as explained above, to avoid any dispute
6   regarding the reasonableness of Ms. Lin's rate, Whitewater unilaterally reduced her
7   rate to $150.00 per hour to be consistent with the May 2017 *Flowrider* Sanctions
8   Order, which found $150.00 per hour to be a reasonable rate for paralegal work.

9        ***Kevin Parker***

10       Kevin Parker is a litigation technology project manager at Buchalter. Taché
11  Decl., ¶ 38. Mr. Parker has more than 15 years of experience in litigation
12  technology and e-Discovery and is certified in the data processing tools LexisNexis
13  LAW and iPro eCapture. *Id*. Mr. Parker has managed hundreds of high-profile
14  litigation matters. *Id*.

15       Through March 31, 2019, Whitewater incurred attorney's fees for 70.1 hours
16  of Mr. Parker's work on this case. Taché Decl., ¶ 39. Among other things, Mr.
17  Parker worked as the Relativity database architect for document review, assisting in
18  document productions, data collection, processing, and management. *Id*. Mr.
19  Parker also assisted attorneys with complex document queries, and deposition and
20  exhibit preparation. *Id*. The total amount billed for this work was $12,267.50,
21  which equates to an average hourly rate of $175.00. *Id*. Although Whitewater
22  believes that $175.00 is a reasonable rate for Mr. Parker's work, as explained
23  above, to avoid any dispute regarding the reasonableness of Mr. Parker's rate,
24  Whitewater unilaterally reduced his rate to $150.00 per hour to be consistent with
25  the May 2017 *Flowrider* Sanctions Order for similar work.[7]

26  _____

27  [7] The *Flowrider* Sanctions Order found $150.00 per hour to be a reasonable rate for
    paralegal work. While Mr. Parker is not a paralegal, the work he performs requires
28  specialized knowledge and experience, without which he could not perform his
    work. Taché Decl. ¶ 40.

C.      **Whitewater Is Entitled To Recover All Of Its Fees Without Apportionment Or Reduction**

"The product of reasonable hours times a reasonable rate does not end the inquiry. There remain other considerations that may lead the district court to adjust the fee upward or downward, including the important factor of the 'results obtained.'  This factor is particularly crucial where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief. In this situation two questions must be addressed.  First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?  Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"  *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

1.      **Whitewater's unsuccessful claims were related to its successful claims**

Defendants will likely argue that Whitewater's fee request should be reduced because Whitewater did not prevail on its interference with contract or unfair business practices claims.  Any such requested reduction should be denied.

Where a plaintiff fails to prevail on *unrelated* claims, a fee award may be reduced for the time spent on those claims.  *Hensley*, 461 U.S. at 434-435. However, where, as here, a plaintiff prevails on some, but not all of its claims, a court will award attorney's fees for "claims upon which the plaintiff failed to prevail [that] were *related to* the plaintiff's successful claims."  *Marsu*, 185 F.3d at 939 (citations omitted, emphasis in original).  Claims are related where they are "based on the same common core of facts."  *Id*.; *see also, Hensley*, 461 U.S. at 435 ("plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. . . In these circumstances, the fee award should not be reduced simply because the plaintiff failed to prevail on ever contention raised in the lawsuit"); *Del Mar Seafoods Inc. v. Cohen*, No. C 07-02952 WHA, 2008 WL

21

11456258, at *5 (N.D. Cal. Dec. 22, 2008) ("Attorneys' fees may be awarded for claims upon which a party failed to prevail, but which were related to the claims which were successful"); *PSM Holding Corp. v. Nat'l Farm Fin. Corp.*, No. CV 05-8891-VBF(FMOX), 2008 WL 11434496, at *3 (C.D. Cal. Jan. 2, 2008) ("Plaintiff is entitled to recover attorneys' fees incurred in litigating the fraud claims on which it has not prevailed. The fraud claims on which Plaintiff did not prevail were related to and intertwined with Plaintiff's successful claims. The related claims involved a common core of facts").

All of Whitewater's claims were related to the common goal of returning the half-pipe, quarter-pipe, and nozzle patents to Whitewater's ownership.  All of Whitewater's claims arose from the same common core of facts, specifically, Alleshouse's Agreement, the work Alleshouse was engaged in at Wave Loch and the timeline of his purported development of "new" inventions after departing Wave Loch, and Alleshouse's and Yeh's claim that they "co-invented" the patents, assigned to PSD.  In particular, Whitewater's breach of contract and declaratory relief claims arose from Alleshouse's breach of his Agreement by not only failing to assign the inventions to Wave Loch, but also affirmatively assigning them to PSD.

Whitewater's interference with contract and unfair business practices claims were premised on these same facts.  Alleshouse breached his contract by not assigning the inventions to Wave Loch.  Instead, he worked with Yeh to assign them to PSD.  Thus, Whitewater alleged that Yeh and PSD interfered with Whitewater's rights under the Agreement and that PSD engaged in unfair or unlawful business practices.  As a result, Whitewater's time on its successful breach of contract and declaratory relief claims is effectively inseparable from its interference with contract and unfair business practices claims. *Hensley*, 461 U.S. at 435 (where claims are interrelated, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

expended on a claim-by-claim basis.  Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."); *PSM Holding Corp.*, 2008 WL 11434496 at *3 ("As Plaintiff asserts, all the claims arose from the same transaction and circumstances. Apportioning the attorneys' time would be impracticable, if not impossible.").

Defendants cannot dispute that Whitewater's interference with contract and unfair business practices claims are directly related to Whitewater's other claims. The *only* argument Defendants made in support of summary judgment on Whitewater's interference with contract and unfair business practices claims is that they are "predicated on the alleged breach of the assignment provision" and therefore "if the Court grants summary judgment on the breach of contract claim, it should also grant summary judgment on Plaintiff's derivative claims."  ECF No. 86 at 18:10-13.  Thus, any argument that Whitewater's fees should be reduced because it did not prevail on these related claims should be rejected.  *Marsu*, 185 F.3d at 939 ("We also reject Disney's argument that the district court should have apportioned the attorneys' fees award because Marsu did not prevail on all of its [related] claims").

## 2. Whitewater's fees should not be reduced because it did not recover monetary damages

"The second step of the *Hensley* analysis is to consider whether 'the plaintiff achieve[d] a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'"  *Sorenson v. Mink*, 239 F.3d 1140, 1147 (9th Cir. 2001) (citing *Hensley*, 461 U.S. at 434).  The Court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."  *Hensley*, 461 U.S. at 435.  "Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."  *Id.*

A plaintiff may obtain excellent results without receiving all the relief requested. *Id.* at 435 n. 11.  Where the plaintiff's "mission was accomplished," the Court is justified in awarding full fees without reduction.  *Sorenson,* 239 F.3d at 1147.  Whitewater's mission was the return of the nozzle, half-pipe, and quarter-pipe patents.  Whitewater achieved its mission. The Court found in favor of Whitewater on its breach of contract, correction of inventorship, and declaratory relief claims, ordering that Yeh be removed from the patents and that the patents be returned, in their entirety, to Whitewater.  That Whitewater did not also obtain monetary relief does not diminish the fact that it obtained "excellent results" entitling it to an unreduced fee award.  *Hensley*, 461 U.S. at 435 n. 11 ("a plaintiff who failed to recover damages but obtained injunctive relief, or vice versa, may recover a fee award based on all hours reasonably expended if the relief obtained justified that expenditure of attorney time.").[8]  Thus, Whitewater is entitled to the full measure of its attorney's fees and costs without reduction.

### D.  Whitewater Is Entitled To Attorney's Fees For This Motion

A prevailing party is entitled to fees for time spent in preparing and litigating the fee application. *See Serrano v. Unruh*, 32 Cal. 3d 621, 639 (Cal. 1982). Whitewater will provide the total fees incurred for this motion as part of its reply to Defendants' opposition.

### E.  Whitewater's Fees and Costs Are Recoverable Against Alleshouse and PSD

There is no doubt that Alleshouse, as a party to the Agreement, is liable for Whitewater's attorney's fees.  Civil Code § 1717; CCP § 1021.  But, PSD is also

---

[8] Further justifying an unreduced fee award, Whitewater's success was achieved in the face of a strong and unnecessarily aggressive defense by Defendants that prolonged this litigation, including Defendants' repeated failure to produce relevant communications between Alleshouse and Yeh. *Stonebrae, L.P. v. Toll Bros.*, No. C-08-0221-EMC, 2011 WL 1334444, at *18 (N.D. Cal. Apr. 7, 2011), *aff'd*, 521 F. App'x 592 (9th Cir. 2013) (awarding full fees despite partial success where "the time spent reflects the vigor by which Toll defended this case, asserting numerous defenses some of which prolonged this litigation.").

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES
BN 36171782v7

Case No. 3:17-CV-00501-DMS-NLS

liable for those fees even though it is not a signatory to the Agreement.

"[A] nonsignatory may under the right circumstances be entitled to enjoy the benefit (or suffer the detriment) of contract language allowing recovery of fees." *United States v. KISAQ-RQ 8A 2 JV*, No. 13-CV-00469-HRL, 2015 WL 5935364, at *5–6 (N.D. Cal. Oct. 13, 2015).  Specifically, "[a] nonsignatory will be bound by an attorney fees provision in a contract when the nonsignatory party 'stands in the shoes of a party to the contract.'"  *Apex LLC v. Korusfood.com*, 222 Cal. App. 4th 1010, 1017–18 (2013) (citations and quotations omitted).  This is because California Civil Code § 1717 mandates a mutuality of remedy for fee claims under contractual provisions.  Also, California courts interpret § 1717 "... to further provide a reciprocal remedy for a nonsignatory defendant, sued on a contract as if he were a party to it, when a plaintiff would clearly be entitled to attorney fees should he prevail in enforcing the contractual obligation against the defendant." *Reynolds Metals Co. v. Alperson*, 25 Cal. 3d 124, 128 (1979).

PSD "stands in the shoes" of Alleshouse because the Agreement specifically provides that it "***shall be binding upon Employee's*** heirs, executors, administrators or other legal representative or ***assigns***."  Agreement ¶ 10(c) (emphasis added).  Alleshouse assigned the inventions to PSD.  ECF No. 166 at 8:17-19 ("Mr. Alleshouse . . . assigned the patents to PSD").  As a result, Whitewater was required to sue PSD for declaratory relief to enforce its rights under the Agreement and take rightful possession of the patents.  *Douglas E. Barnhart, Inc. v. CMC Fabricators, Inc.*, 211 Cal. App. 4th 230, 242 (2012) (an action "on a contract" is broadly construed to include an action or cause of action that "... arises out of, is based upon, or relates to an agreement by seeking to define or interpret its terms or to determine or enforce a party's rights or duties under the agreement.").  Thus, the Court should award attorney's fees and costs jointly and severally against Alleshouse and PSD.

**III.   <u>CONCLUSION</u>**

For the foregoing reasons, the Court should grant Whitewater's motion and award Whitewater reasonable attorney's fees at least in the amount of $1,826,246.50.


DATED:  April 18, 2019                    BUCHALTER
                                          A Professional Corporation


                                          By:  */s/  Roger L. Scott*
                                                Gary A. Wolensky
                                                J. Rick Taché
                                                Roger L. Scott
                                                Attorneys for Plaintiff
                                                Whitewater West Industries, Ltd.

DATED:  April 18, 2019                    SNELL & WILMER, LLP


                                          By:  */s/Deborah S. Mallgrave*
                                                Debora S. Mallgrave
                                                Attorneys for Plaintiff
                                                Whitewater West Industries, Ltd.

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES                    Case No. 3:17-CV-00501-DMS-NLS
BN 36171782v7

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on April 18, 2019, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Civil Local Rule 5.4.  Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile and/or overnight delivery.


*/s/  Roger L. Scott*_____
Roger L. Scott

BUCHALTER
A PROFESSIONAL CORPORATION
IRVINE

PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

Case No. 3:17-CV-00501-DMS-NLS

BN 36171782v7