# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., a Canadian corporation<br><br>Plaintiff,<br><br>vs.<br><br>RICHARD ALLESHOUSE, an individual, YONG YEH, an individual, and PACIFIC SURF DESIGNS, INC., a Delaware corporation,<br><br>Defendants. | Case No. 17-cv-501 DMS (NLS)<br><br>**ORDER:**<br><br>**(1) GRANTING IN PART AND DENYING IN PART DEFENDANTS' REQUEST TO AMEND FINDINGS**<br><br>**(2) DENYING DEFENDANTS' REQUEST TO AMEND JUDGMENT**<br><br>**(3) DENYING DEFENDANTS' REQUEST TO STAY** |

After a bench trial, this Court issued Findings of Fact and Conclusions of Law and entered Judgment accordingly. Presently before the Court is Defendants' motion to: (1) amend Findings of Fact and Conclusions of Law under Rule 52(b) of the Federal Rules of Civil Procedure, (2) amend the Judgment under Rules 52(b) and 59(e), and (3) stay the Judgment under Rule 62.

/ / /

/ / /

/ / /

# I.

# LEGAL STANDARD

Rule 52(b) permits a trial court, on motion made by a party no later than 28 days after entry of judgment, to "amend its findings–or make additional findings" and to "amend the judgment accordingly." Fed. R. Civ. P. 52(b). "On motions to amend, however, the findings of fact made by the trial court are entitled to presumptive validity, and will be set aside only if they are clearly erroneous." *United States v. Schiffer*, 836 F. Supp. 1164, 1177 (E.D. Pa. 1993) (citing Fed. R. Civ. P. 52(a)). "Like a Motion for New Trial, the purpose of a motion to amend judgment is to correct manifest errors of law or fact or to present newly discovered evidence." *Id.* (citing *Harsco Corp. v. Zlotnick*, 779 F.2d 906, 909 (3d Cir. 1985)). A motion to amend a court's factual and legal findings is properly denied where the proposed additional facts would not affect the outcome of the case or are immaterial to the court's conclusions. *Weyerhaeuser Co. v. Atropos Island*, 777 F.2d 1344, 1352 (9th Cir. 1985). Furthermore, the motion may not be used to raise new legal theories that could have been raised earlier in the litigation. *See Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1220 (5th Cir. 1986) ("Blessed with the acuity of hindsight, [a party] may now realize that it did not make its initial case as compellingly as it might have, but it cannot charge the District Court with responsibility for that failure through [a] Rule 52(b) motion."); *accord Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 05–1660, 2008 WL 1805828, at *2 (S.D. Cal. Apr. 21, 2008) ("A party may not use a Rule 52(b) motion to introduce any new facts or legal theories that were available to them at trial, much less re-litigate facts and legal theories that have previously been rejected by the court."). "Rulings on motions to amend findings are committed to the sound discretion of the district court and will not be disturbed absent an abuse of discretion." 9C Charles Alan Wright & Arthur Miller, Fed. Practice & Procedure § 2582 (3d ed. 2008).

Similar to Rule 52(b), a motion to amend a judgment under Rule 59(e) is

appropriate if (1) the motion is necessary to correct manifest errors of law or fact upon which the judgment is based; (2) the moving party presents newly discovered or previously unavailable evidence; (3) the motion is necessary to prevent manifest injustice; or (4) there is an intervening change in controlling law." *Turner v. Burlington Northern Santa Fe R. Co.*, 338 F.3d 1058, 1063 (9th Cir. 2003) (punctuation modified).

Here, Defendants move to amend Findings of Fact and Conclusions of Law ("Findings) and the Judgment on the ground that the Court committed manifest error in finding that Mr. Yeh was not a joint inventor and that Mr. Alleshouse breached the Agreement.

## II.
## DISCUSSION

### A. Mr. Yeh's Misjoinder

Defendants contend the Court clearly erred in finding that Mr. Yeh was improperly named as an inventor on the three patents at issue. Specifically, they argue the Court erred by failing to engage in claim construction of the patents. But Defendants stipulated that all claim terms would be construed according to their plain and ordinary meaning. (*See* ECF No. 126 at 2:11–14 ("The parties agree that neither party will offer testimony or other evidence suggesting that any term used in any claim of Defendant Pacific Surf Designs' three patents at issue should be assigned anything other than its plain and ordinary meaning.").) Thus, the Court did not need to engage in further claim construction. *See, e.g.*, *Eli Lilly and Co. v. Aradigm Corp.*, 376 F.3d 1352, 1360 (Fed. Cir. 2004) (rejecting defendant's argument that "the district court erred by not construing [a claim]" because it "never requested that the district court construe any terms in [the claim] and never offered a construction of [the claim]"); *United States Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) (holding that claim construction is required only "when the meaning or scope of technical terms and words of art is unclear and in

dispute and requires resolution to determine" the issue before the court).

Defendants also assert that the Court erred by failing to undergo a limitation-by-limitation analysis of each patent claim in determining that Mr. Yeh was not a joint inventor. During trial, Plaintiff addressed each of Mr. Yeh's alleged patentable contributions and presented evidence that those features were "either rejected by the patent office or mirrored pre-existing technology by Wave Loch." (*See* Findings at 22.) Defendants stipulated to the entry of the file histories, and Dr. Stevich, based on his review of the patents and file histories, explained what happened during the prosecution.[1] An amendment of the Findings would not change the outcome of the case. *See Weyerhaeuser*, 777 F.2d at 1352. Nevertheless, upon Defendants' request for clarification, the Court amends the Findings to include the following:

Mr. Yeh alleges he contributed to Claims 1, 2, 18, and 19 of the '685 Patent. (Ex. 75 at 5–6.) Specifically, he purports to have contributed to Claim 1 ("a middle section adjacent to at least one safety chute section," "the plurality of sidewalls [] adjacent to the middle section and to [] at least one safety chute section," and "the water delivery section [that] creates a flowing body of water over the middle section towards [] at least one safety chute section"), Claim 2 ("the plurality of opposing nonparallel sidewalls adjacent to the middle section [] any shape chosen from a group consisting of one or more of: concave, planar, substantially planar, convex, ellipse, and complex curve shapes"), Claim 18 ("water recovery area adjacent to either the plurality of middle or sidewall areas" and "water recovery area [] coupled to the plurality of sidewall areas"), and Claim 19 ("water recovery area [] coupled to the plurality of sidewall areas"). (*Id.*; Ex. 11.)[2] However, the file history for the

---

[1] Defendants had an opportunity to cross-examine Dr. Stevich regarding his review of the patents and their file histories, as well as offer testimony from their own expert to dispute Dr. Stevich's observations—but they did not do so.

[2] Upon review, the Court recognizes that it inadvertently imported language from the file history to state that Mr. Yeh's alleged contributions to Claims 18 and 19 include a "plurality of elevated water recovery sections." (*See* Findings at 22.) The

'685 Patent demonstrates the Patent Examiner found these purported contributions to be unpatentable in light of Mr. Lochtefeld's earlier patent. (Ex. 132 at 50; Dr. Stevich Testimony at 412, 414–15.)

As to the '189 Patent, Mr. Yeh claims he contributed to Claims 3, 14, and 15. (Ex. 75 at 7.) Specifically, he purports to have contributed to Claim 3 ("plurality of opposing nonparallel sidewalls adjacent to the middle section [] any shape chosen from a group consisting of one or more of: concave, planar, substantially planar, convex, ellipse, and complex curve shapes"). (*Id.*; Ex. 13.) However, the file history for the '189 Patent establishes that the Patent Examiner found this feature to be unpatentable in light of Mr. Lochtefeld's prior patent. (Ex. 133 at 31; Dr. Stevich Testimony at 417–18.) Mr. Yeh also alleges to have contributed to Claim 14 ("a safety chute section and a safety chute sidewall positioned between the activity section and the first water recovery section") and Claim 15 ("the safety chute sidewall [] oriented at a non-parallel angle relative to the first rideable sidewall"). (*Id.*) However, these features reflected existing technology from prior art rides. (Ex. DD3; Lochtefeld Testimony at 525–26, 592–94.)

As to the '433 Patent, Mr. Yeh alleges he contributed to Claims 1, 7, 10, and 11. (Ex. 75 at 8.) Specifically, he purports to have contributed to Claim 1 ("the orifice [that] is non-planar in a Z-Y plane creating a varying thickness of the orifice in the Z-Y plane" and "the thickness of the orifice in the Z-Y plane [that] is adjustable to different thicknesses along a length of the orifice in the Z-Y plane"). (Ex. 75 at 8; Ex. 14.) However, the file history for the '433 Patent establishes that the Patent Examiner found varying thickness to be unpatentable in light of Mr. Lochtefeld's prior patent. (Ex. 134 at 86; Dr. Stevich Testimony at 421–22.) And adjustable thickness was a feature already present in Wave Loch's nozzles at the

---

Court amends the quoted portion to be replaced with "water recovery sections," which is what Mr. Yeh purports to have contributed.

time. (Lochtefeld Testimony at 529–32; Yeh Testimony at 693–94.) Additionally, Mr. Yeh alleges to have contributed to Claim 7 ("the flowing body of water emanates from the orifice at flow angles that vary along a length of the orifice formed by the plurality of orifice walls") and Claim 10 ("a plurality of outer walls outside of the plurality of orifice walls, wherein the plurality of outer walls is at a different angle than the plurality of orifice walls"). (Ex. 75 at 8; Ex. 14.) However, the file history for the '433 Patent demonstrates that the Patent Examiner found these features to be unpatentable. (Ex. 134 at 83; Dr. Stevich Testimony at 422.) Lastly, Mr. Yeh alleges to have contributed to Claim 11 ("a plurality of internal walls coupled to sides of the plurality of orifice walls, wherein the plurality of internal walls forms a side angle from a rear plane of the nozzle to the sides of the plurality of orifice walls of the orifice"). (Ex. 75 at 8.) However, this feature was already present in Wave Loch's existing nozzles. (Lochtefeld Testimony at 533–34.)

After carefully reviewing all of the evidence presented at trial, the Court found based on clear and convincing evidence that Mr. Yeh was not a joint inventor. That evidence includes the patents, file histories, testimony of witnesses, emails between Messrs. Alleshouse and Yeh, videos of Messrs. Alleshouse and Yeh, and the diagrams in Mr. Alleshouse's notebook. Indeed, within two weeks of leaving Wave Loch, Mr. Alleshouse had sketched a half-pipe ride divisible into quarter-pipe rides, with a series of nozzles pointing at different angles that vary the direction and thickness of the water flow. (*See* Exs. 21, 22, 36.)[3] Even if, as Defendants argue, the sketches in the notebook did not specify every single element of the patents at

---

[3] Defendants contend the Court failed to properly account for Mr. Alleshouse's testimony, including that the August 14 diagram showing varying flow direction and thickness to "optimize surfing experience on the waves and [maximize] economics of the attraction" was neither related to sheet waves nor to the August 16 diagram of the half-pipe ride. However, the Court carefully considered Mr. Alleshouse's testimony in light of all the evidence presented at trial. (*See* Findings at 7–8, 17–18, 21–22.)

issue, it was the totality of the evidence that led the Court to conclude that Mr. Alleshouse alone conceived of the inventions and that Mr. Yeh did not make any patentable contributions.

Moreover, Defendants contend the Court clearly erred by failing to make a finding that Mr. Yeh came up with the idea of incorporating skate park features into sheet wave rides. The Court did not explicitly include this in the Findings because Mr. Yeh's suggestion "was really [] throwing stuff at the wall." (Alleshouse Testimony at 267; Yeh testimony at 370 ("They were just us throwing stuff at the wall because we're going through the ideation process, and we kind of picked out—and I have a skateboard, snowboard background, and these are things I kind of enjoyed going to, so we just kind of looked and saw what we could do.")). As indicated in the Findings, Mr. Yeh "helped identify practical issues with the models based on his experiences in surfing and skateboarding." (Findings at 22.) But "one who merely suggests an idea of a result to be accomplished, rather than means of accomplishing it, is not a joint inventor." *See, e.g.*, *Garrett Corp. v. U.S.*, 422 F.2d 874, 881 (Ct. Cl. 1970); *Nartron Corp. v. Schukra U.S.A. Inc.*, 558 F.3d 1352, 1353, 1359 (Fed. Cir. 2009) ("[T]he alleged co-inventor provided only an insignificant contribution" and "is not entitled to co-inventorship by simply posting the result to [the inventor] and leaving it to [the inventor] to figure out how to accomplish it."); *Eli Lilly & Co.*, 376 F.3d at 1359 ("Contributions to realizing an invention may not amount to a contribution to conception … if they are too far removed from the real-world realization of an invention.") (citing *Garrett Corp*, 422 F.2d at 881). Although Defendants disagree with the Court's holding, they have not demonstrated that the Court committed clear error in finding that Mr. Yeh is not a joint inventor.[4]

---

[4] Defendants also argue for the first time that Mr. Yeh made a patentable contribution to the '433 Patent by combining older elements of "a nonplanar orifice with varying thickness and variable flow angles" and "water flow adjustment in the Z-Y plane." (Defs.' Mot. at 14–15.) Not only is this inconsistent with Mr. Yeh's

### B. Mr. Alleshouse's Breach of the Agreement

Next, Defendants argue that the Court manifestly erred in its legal application of California Labor Code section 2872. In doing so, they reiterate their argument that Wave Loch's failure to provide Mr. Alleshouse with notice under Section 2872 invalidates the Agreement. (*See* Defs.' Trial Brief at 15–16; Mot. for Summ. J. at 12–13.) As previously explained, though Wave Loch did not provide the required notice, the Court finds no legal basis to invalidate the Agreement under California law generally or Section 2872 specifically. (*See* Findings at 13; Order Denying Mot. Summ. J. at 9.)

Defendants correctly point out that Section 2872 requires an employer to provide notice, regardless of whether the subject matter of the patents is integral to an employee's work. As stated in the Findings, "It is undisputed Wave Loch did not provide the required notice to Mr. Alleshouse. California law, however, is silent on the consequences of an employer's failure to provide such notice." (Findings at 13: 2–4.) The Court amends the next sentence in the Findings to be replaced with, "Certainly, that failure should be considered in analyzing procedural unconscionability, but it does not rise to the level of oppression or surprise required to invalidate the Agreement, particularly when considering the lack of substantive unconscionability." (*See* Findings at 13: 4–8.)

Defendants also argue the Court clearly erred by shifting the burden of proof onto Mr. Alleshouse to show that his inventions fall within Labor Code section 2870. But "[t]he employee bears the burden to show that his invention comes within Labor Code section 2870." *See, e.g.*, *Cadence Design Systems, Inc. v. Bhandari*, No. 07-823, 2007 WL 3343085, at *5 (N.D. Cal. Nov. 8, 2007); *Venture Corporation v.*

---

testimony, (*see* Yeh Testimony at 693–95), but also Defendants may not, at this stage of the proceedings, introduce a new legal theory that was available to them at trial. *See Fontenot*, 791 F.2d at 1220; *Antoninetti v. Chipotle Mexican Grill, Inc.*, 2008 WL 1805828, at *2.

*Barrett*, No. 13-3384, 2015 WL 8479475, at *3 (N.D. Cal. Dec. 9, 2015) ("To prove that the three inventions are exempted from assignment under Labor Code § 2870, [the employee] has the burden of [proof] …. "). Even if the burden was on Plaintiff—as Defendants claim without authority, the Court's analysis would remain the same. (*See* Findings at 17–18.) Again, though Defendants disagree with the Court's holding, they have not demonstrated clear error.

C.   **Defendants' Request to Stay**

Lastly, Defendants request that enforcement of the Judgment be stayed pending their appeal to the Federal Circuit. In deciding whether to grant a stay under Rule 62, courts consider four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *E.I. DuPont de Nemours & Co. v. Phillips Petroleum*, 835 F.2d 277, 278, 5 USPQ2d 1109, 1110 (Fed. Cir. 1987). "[T]he four factors can effectively merge" such that the court essentially "assesses movant's chances for success on appeal and weighs the equities as they affect the parties and the public." *Standard Havens Prod. Inc. v. Gencor Indus. Inc.*, 897 F.2d 511, 512 (Fed. Cir. 1990).

Each factor in the analysis need not be given equal weight. *Id*. For example, the Ninth Circuit applies the factors by allowing the party seeking the stay to show either (1) a strong likelihood of success on the merits and the possibility of irreparable harm, or (2) that serious legal questions are raised and that the balance of hardships tips sharply in its favor. *Golden Gate Rest. Ass'n v. City & County of San Francisco*, 512 F.3d 1112, 1115 (9th Cir. 2008). Defendants request a stay on the ground that they raise "serious legal questions." Plaintiff argues that Defendants may not rely on the Ninth Circuit's standard, since they are appealing to the Federal Circuit. The Court declines to resolve this question as Defendants have not made a

sufficient showing to warrant a stay under either standard.

### i. Likelihood of Success on the Merits

Defendants must establish a strong likelihood of success on appeal, or failing that, demonstrate a substantial case on the merits provided the other factors militate in Defendants' favor. *Standard Havens Prod., Inc.*, 897 F.2d at 512–13 (citing *Hilton*, 481 U.S. at 778). For the reasons discussed, the Court does not find that Defendants have established a strong likelihood of success or a substantial case on the merits. The Court also declines to find that Defendants have raised serious legal questions. And even if they did, they have failed to show that the balance of hardships tips sharply in their favor. *See Golden Gate Rest. Ass'n*, 512 F.3d at 1115.

### ii. Irreparable Injury

Defendants argue that they will be irreparably harmed if Plaintiff diminishes the value of the patents, such as by abandoning them. But "[s]peculative injury cannot be the basis for a finding of irreparable harm." *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) (citations omitted). Moreover, Defendants fail to provide any evidence to support their claim that Plaintiff is likely to diminish the value of the patents, particularly after Plaintiff spent two years in litigation to recover them. *Cf. Standard Havens Prods.*, 897 F.2d at 515 (finding that evidence of employee layoffs, immediate insolvency, and possible extinction of a company provide a basis of irreparable harm that militates in favor of granting a stay). Accordingly, Defendants fail to show they are likely to suffer irreparable injury absent a stay.

### iii. Substantial Injury, Public Interest, Balance of the Equities

Plaintiff argues that allowing Defendants to continue to use and benefit from the patents that have been determined to belong to Plaintiff is inequitable. Plaintiff also points out that "[t]he public interest nearly always weighs in favor of protecting property rights in the absence of countervailing factors." *See Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, No. 14-02061, 2016 WL 7319538, at *5 (S.D.

Cal. Sept. 19, 2016) (citing *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 647 (Fed. Cir. 2015)).

After assessing Defendants' chance for success on appeal and weighing the equities concerning the parties and the public, the Court declines to stay the Judgment. *See Standard Havens*, 897 F.2d at 513. Defendants have failed to show a likelihood of success on the merits or that that the balance of hardships tips sharply in their favor. *See Golden Gate Rest. Ass'n*, 512 F.3d at 1115.

### III.
### CONCLUSION

For the foregoing reasons, the Court (1) GRANTS in part and DENIES in part Defendants' request to amend Findings of Fact and Conclusions of Law, as reflected; (2) DENIES Defendants' request to amend the Judgment; and (3) DENIES Defendants' request to stay the Judgment.

**IT IS SO ORDERED.**

Dated: August 1, 2019

Hon. Dana M. Sabraw
United States District Judge