Manuel de la Cerra (SBN 189313)
THE LAW OFFICE OF MANUEL DE LA CERRA
7040 Avenida Encinas, Suite 104-381
Carlsbad, CA 92011
760.809.5520 Telephone
760.269.3542 Fax
manny@delacerralaw.com

John Roberts (SBN 208927)
ROBERTS IP LAW
3129 25th St. #295
Columbus, IN 47203
812-418-3663 Telephone
440-448-4348 Fax
john@robertsiplaw.com

*Attorneys for Defendants*
PACIFIC SURF DESIGNS,
RICHARD ALLESHOUSE AND YONG YEH

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| WHITEWATER WEST INDUSTRIES, LTD., a Canadian corporation,<br><br>Plaintiff,<br><br>v.<br><br>RICHARD ALLESHOUSE, an individual, YONG YEH, an individual, and PACIFIC SURF DESIGNS, INC., a Delaware corporation,<br><br>Defendants. | Case No. 3:17-CV-00501-DMS(NLS)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION FOR FEES AND RELATED NONTAXABLE EXPENSES UNDER FRCP 54(D)(2)**<br><br>JUDGE: Hon. Dana M. Sabraw<br><br>DATE: March 5, 2021<br><br>TIME: 1:30<br><br>COURTROOM: 13A |

# <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION AND BACKGROUND ................................................................1

II.  ARGUMENT .......................................................................................................3

  A.  This Court is Authorized to Award PSD its Attorney Fees Under the
      Employment Agreement, Pursuant to FRCP 54(d) and California Law....................3

  B.  The Prerequisites For An Award Are Met...........................................................4

    i.   PSD is the Prevailing Party. ...................................................................4

    ii.  The Legal Fees Sought by PSD are Reasonable and Customary. .....................5

  C.  PSD Should be Awarded Related Nontaxable Expenses. ...................................10

    i.   Attorney Travel and Accommodation ..............................................................11

    ii.  Copy Costs, and Trial Technology and Support ..............................................11

    iii. eDiscovery....................................................................................................12

    iv. Court Report Fees .........................................................................................13

    v.  Other Necessary Litigation Expenses..............................................................13

  D.  PSD Should Be Awarded Its Rebuttal Expert Fees Incurred to Refute
      Whitewater's Expert Testimony on Its Baseless Claims. ........................................13

  E.  Whitewater's Bad Faith Included Misleading this Court on Two Key Points That
      it Conceded on Appeal, Resulting in Reversal...........................................................19

  F.  PSD is Entitled to Its Attorney Fees in Prevailing on the Inventorship Issue;
      Whitewater Has Already Conceded that This Was Part of the Dispute Under the
      Employment Agreement.............................................................................................21

  G.  PSD is Entitled to Its Attorney Fees For Preparing and Prosecuting This
      Motion. .....................................................................................................................24

III. CONCLUSION ................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Amsted*, 23 F.3d at 378 .......................................................................................15, 18, 21

*Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment (Shanghai) Co.*, 630 F. Supp. 1084 (N.D. Cal. 2009)..........................................................................20

*Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968 (2013) ....................................11

*Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223 (Fed. Cir. 1994) .............19

*Chaaban v. Wet Seal, Inc.* 203 Cal.App.4th 49 (2012) ................................................11

*Deep Sky Software, Inc. v. Southwest Airlines Co.*, 2015 WL 10844231 (S.D. Cal. Aug. 19, 2015);...............................................................................................................8

*Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234 (9th Cir. 2001)..............................................................................................................................4

*Green v. County of Riverside*, 238 Cal. App. 4th 1363 (2015) ....................................11

*Hooked Media Group Inc.  v. Apple Inc.*, 55 Cal. App 5th 323 (2020) ........................12

*iLOR, LLC v. Google, Inc.*, 631 F.3d 1372 (Fed. Cir. 2011)........................................18

*In re Penrod*, 802 F.3d 1084 (9th Cir. 2015)................................................................22

*In re Verbeck*, No. 16-40409 CN, 2017 WL 6389087 (Bankr. N.D. Cal. Dec. 13, 2017) .................................................................................................................................22

*Jardin v. DATAllegro, Inc.,* 2011 WL 4835742 (S.D. Cal. Oct. 12, 2011 ....................12

*Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960 (2004) .............................................................................................................15

*Linex Techs. v. Hewlett-Packard Co.*, No., 2014 WL 5494906 (N.D. Cal. Oct. 30, 2014)............................................................................................................................12

*MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012)........................16

*Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932 (9th Cir. 1999) ...................................23

*Mathis v. Spears*, 857 F.2d 749 (Fed. Cir. 1988) ...................................................18, 21

*Maynard v. BTI Grp., Inc.*, 216 Cal. App. 4th 984 (2013)...........................................23

*Miske v. Coxeter*, 204 Cal. App. 4th 1249 (2012) .......................................................23

*Page v. Something Weird Video,* 960 F.Supp. 1438 (C.D. Cal. 1996) ..........................11

*Rosco, Inc. v. Mirror Lite Co.,* 2009 WL 3587344 (E.D. N.Y. 2009) ..........................18

*Scott Co. of Cal. v. Blount, Inc.,* 20 Cal. 4th 1103 (Cal. 1999) ......................................5

*Serrano v. Unruh,* 32 Cal. 3d 621 (Cal. 1982) ..............................................................24

*Shaw v. Credit Collection Serv.,* 2009 WL 4981620 (S.D. Cal. Dec. 14, 2009) ..........24

*SunTiger Inc. v. Telebrands Advertising Corp.,* 73 U.S.P.Q.2d 1730, 2004 WL
   3217731 (E.D. Va. 2004) ....................................................................................18, 21

*Takeda,* 549 F.3d at 1391 ....................................................................................15, 18, 21

*Thompson v. Miller,* 112 Cal. App. 4th 327 (2003) ......................................................23

*Tibble v. Edison Int'l,* 2011 WL 3759927 (C.D. Cal. Aug. 22, 2011) ..........................12

*Zest IP Holdings, LLC v. Implant Direct Mfg., LLC,* 2014 WL 6851612 (S.D. Cal.
   Dec. 3, 2014) ............................................................................................................8

**Statutes**

35 U.S.C. § 256 ................................................................................................................25

8 U.S.C. §1920 ................................................................................................................13

Cal. Civ. Code §1717 ..............................................................................................2, 4, 5

Cal. Code of Civ. P. §1033.5 ..............................................................................2, 4, 11, 12

Cal. Code of Civ. P. §1032 ............................................................................................11

**Rules**

FRCP 54(d) ................................................................................................................2, 3, 10

## I.    __INTRODUCTION AND BACKGROUND__

Plaintiff Whitewater West Industries, LTD ("Whitewater") brought this action against its former employee Defendant Richard Alleshouse, his business partner Defendant Yong Yeh, and their company Defendant Pacific Surf Designs, Inc. (collectively "PSD"). Whitewater alleged that Mr. Alleshouse breached a patent assignment provision in an employment agreement between Mr. Alleshouse and Whitewater's predecessor-in-interest (the "Employment Agreement"). Whitewater further alleged that this breach entitled them to ownership of Mr. Alleshouse's patents, which Whitewater argued it should own free-and-clear because Mr. Yeh should not have been included as a co-inventor.

This Court accepted Whitewater's arguments ruling that the Employment Agreement was valid, that Mr. Alleshouse breached it, and that Mr. Yeh was improperly named an inventor. Thus, Whitewater was awarded complete assignment of PSD's patent interests, but no damages. ECF 166 (Finding of Fact).

PSD appealed the Judgment to the Federal Circuit on causes of action one and four through seven (breach of contract, declaratory relief, and inventorship of the three patents-at-issue). On November 19, 2020, the Federal Circuit reversed the Judgment in its entirety and held that the assignment provision at issue in the Employment Agreement was not enforceable under California law (thereby reversing the breach of contract and declaratory relief claims, causes of action one and four, respectively), and

therefore Whitewater lacked standing to pursue its correction of inventorship claims (thereby reversing causes of action five through seven). ECF 212 (Mandate).

Paragraph 9 of the Employment Agreement entitles the prevailing party to "recover reasonable attorneys' fees and other expenses incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled" in "any legal action or other proceeding [that] is brought for the enforcement of the Agreement, or because of an alleged dispute, breach, default, or misrepresentation in connection with any of the provisions of this Agreement…." de la Cerra Decl. Ex. A1 (Agreement ¶9). PSD sought from the Federal Circuit its fees and costs incurred on appeal by the de la Cerra firm (approximately $147,000). De la Cerra Decl. ¶15. Whitewater did not oppose PSD's request for attorney's fees and costs on appeal, and the Federal Circuit granted the motion without any reduction in the requested amount. *Id.* Whitewater paid PSD the full award on January 13, 2021. *Id.*

On January 14, 2021 this Court entered a Judgment finding in favor of PSD on each and every cause of action, and allowing PSD to file a motion for fees and costs/expenses. ECF 210. PSD now seeks from this Court an order awarding PSD the fees and related nontaxable expenses it incurred in defending itself against Whitewater in this action, in the amount of $1,557,277.36. Issuance of such an order is authorized and appropriate in view of FRCP 54(d), Cal. Civ. Code §1717, Cal. Code of Civil Procedure §1033.5, this Court's January 14, 2021 Judgment (ECF 210), and the Employment Agreement.

Further, this Court recognized in its Findings of Fact (ECF 166) that Whitewater's experts had presented absolutely no evidence to support damages. As such, Whitewater should never have asserted damages and forced PSD to proffer rebuttal expert testimony to address Whitewater's baseless position. Whitewater's baseless arguments are part of its concerted bad faith effort to crush PSD, Whitewater's much smaller competitor, with the overwhelming costs of serial meritless litigation. This case is just one of four Whitewater waged against PSD in bad faith, all of which Whitewater has lost. To begin to dissuade Whitewater from its continuing abuse of PSD and the court system with meritless litigation, PSD seeks recovery of expert fees it incurred to rebut Whitewater's misuse of experts to urge its baseless claims, and any other remedies deemed appropriate under the inherent authority of this Court.

II.   **ARGUMENT**

   **A. This Court is Authorized to Award PSD its Attorney Fees Under the Employment Agreement, Pursuant to FRCP 54(d) and California Law.**

Federal Rule of Civil Procedure 54(d)(2)(B) provides that a fees motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award". The authority for the present award is the Parties' Employment Agreement, which provides at paragraph 9:

   "Recovery of Costs. If any legal action or other proceeding, [] is brought for the enforcement of the Agreement [], **the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding**, in addition to any other

relief to which it or they may be entitled." de la Cerra Decl. Ex. A1 (Agreement ¶9, emphasized).

The Employment Agreement is governed by California law. *Id.* (Agreement ¶10(e)). California law provides that attorney fees authorized by a contract are a cost recoverable by the prevailing party. Cal. CCP § 1033.5(a)(10); Cal. Civ. Code §1717 (a). California Civil Code §1717 provides for an award of attorney's fees where "the parties contractually obligate themselves" to compensate each other. *Farmers Ins. Exch. v. Law Offices of Conrado Joe Sayas, Jr.*, 250 F.3d 1234, 1237 (9th Cir. 2001) .

Accordingly, pursuant to Cal. Civ. Code §1717 and the terms of the Employment Agreement, PSD, as the prevailing party in this litigation, is "entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding, in addition to any other relief to which it or they may be entitled." de la Cerra Decl. Ex. A1 (Agreement ¶9).

## B. The Prerequisites For An Award Are Met.

### i. PSD is the Prevailing Party.

This Court's Judgment confirmed that PSD was completely victorious in prevailing on each and every cause of action in this case. ECF 210 ("Plaintiff Whitewater West Industries's requests for monetary damages, attorney's fees, other fees, costs, **and all other relief is denied**") (emphasized). In contrast, Whitewater failed to prevail on a single cause of action or obtain any of the relief it requested. "When a party obtains a simple, unqualified victory ... and the contract contains a provision for attorney fees, [Cal. Civ. Code §] 1717 entitles the successful party to

recover reasonable attorney fees incurred in prosecution or defense of those claims." *Scott Co. of Cal. v. Blount, Inc*., 20 Cal. 4th 1103, 1109 (Cal. 1999). PSD is plainly "entitled to recover reasonable attorneys' fees and other costs incurred in th[is] action or proceeding, in addition to any other relief to which it or they may be entitled." de la Cerra Decl. Ex. A1 (Agreement ¶9). Whitewater has conceded this point by not opposing PSD's motion for appeal-related fees/costs under the Employment Agreement, and by then paying the full $147,000 PSD requested. *Id*. at ¶15.

### ii.    The Legal Fees Sought by PSD are Reasonable and Customary.

California Civil Code § 1717(a) provides that only reasonable fees can be allocated under a contract. Attached hereto is the declaration of PSD counsel Mr. Manuel de la Cerra that includes at A5 (legal-related fees) a detailed itemization of each service rendered and the amount of time expended by Mr. de la Cerra and his colleague Mr. Roberts rendering each service. Also included is the declaration of PSD counsel Mr. Charanjit Brahma that includes at Exhibit B1 a spreadsheet for the Troutman attorneys and staff billings, eMerge attorney and staff billing, and costs/expenses. These declarations detail the background and experience of all time-billers in this action, which is not repeated here to prevent unnecessary duplication. The rates charged by the professionals representing PSD are reasonable given their specialized technical and legal backgrounds and experience, and are notably less than the corresponding rates charged by Whitewater's counsel.

Whitewater's now-denied motion for fees (ECF 168, ECF 191) instructively demonstrates the comparative reasonableness of PSD's counsel's fees by at least two measures: (1) the hourly rate charged by the professionals; and (2) the total amount charged for the prosecution of this litigation.

As to the first measure, Whitewater has already taken the position that billable rates for associate attorneys in the range of $318 to $530 were reasonable. ECF 168-1, pg. 4. Whitewater also admitted that billable rates of $509 to $786 for partners staffing this case were reasonable. *Id*. Paralegal rates of $250-$375 are also reasonable according to Whitewater. *Id*. Below is a chart presented by Whitewater at ECF 168-1, pg. 4-5, listing the fees it has already acknowledged are reasonable:

| Name (Position) | Hours | Avg. Rate | Total Fees |
|---|---|---|---|
| J. Rick Taché (Shareholder) | 722.4 | $786.66 | $568,280.25 |
| Jeff Scott (Shareholder, GT) | 11.7 | $928.85 | $10,867.50 |
| Gary Wolensky (Shareholder) | 233.6 | $509.16 | $118,940 |
| Kari Barnes (Shareholder) | 87.9 | $502.39 | $44,160 |
| Deborah Mallgrave (Of Counsel, Snell) | 139.0 | $491.38 | $68,301.45 |
| Roger Scott (Senior Counsel) | 843.9 | $530.16 | $500,419.05 |
| Erikson Squier (Senior Counsel) | 497.3 | $530.96 | $264,045.50 |
| Leanna Costantini (Associate, GT) | 129.8 | $480.66 | $62,389.50 |
| Christina Trinh (Associate) | 593.1 | $318.11 | $188,669.50 |
| Alexis Kovacs (Paralegal, GT) | 30.9 | $375.84 | $11,613.50 |
| Branda Lin (Paralegal) | 372.4 | $250.00 | $93,100.00 |
| Kevin Parker (litigation project manager) | 70.1 | $175.00 | $12,267.50 |
| Other GT attorneys and staff | | | $6,648.50 |
| Other attorneys and staff | | | $79,660.05 |
| **Total** | | | **$2,029,362.30** |

On May 24, 2019, Whitewater filed a supplemental declaration seeking an additional $41,193.91 (ECF 179-1), as follows:

| Name (Position) | Hours | Rate | Total Fees |
|---|---|---|---|
| J. Rick Taché (Shareholder) | 8.6 | $750.00 | $4,875.00 |
| Roger Scott (Senior Counsel) | 52.0 | $530.16 | $27,568.32 |
| Christina Trinh (Associate) | 23.5 | $318.11 | $7,475.59 |
| Branda Lin (Paralegal) | 8.5 | $150.00 | $1,275.00 |
| Total | | | $41,193.91 |

Again on August 15, 2019, Whitewater filed a supplemental fee request for an additional $32,775.00 (ECF 191), as set forth below:

| Name (Position) | Hours | Rate[3] | Total Fees |
|---|---|---|---|
| J. Rick Taché (Shareholder) | 11.5 | $750.00 | $8,625.00 |
| Roger Scott (Senior Counsel) | 25.9 | $525.00 | $13,597.50 |
| Erikson Squier (Senior Counsel) | 7.5 | $525.00 | $3,937.50 |
| Christina Trinh (Associate) | 18.6 | $325 | $6,045.00 |
| Branda Lin (Paralegal) | 3.8 | $150.00 | $570.00 |
| Total | | | $32,775.00 |

In comparison, following is a summary for all billers from the Troutman firm, for the entire litigation up to November 28, 2019 (three months beyond Whitewater's supplemental fee motion filing) (Brahma Decl. at ¶¶ 7, 28, Ex. B1):

| Initials | Name | Position | Hours | Rate | Amount |
|---|---|---|---|---|---|
| CB | Charanjit Brahma | Partner | 641.4 | $675 | $432,945.00 |
| MCM | Mark C. Mao | Partner | 341 | $385 | $131,300.76 |
| JMB | Justin M. Barnes | Partner | 8.1 | $675 | $3,037.50 |
| TPH | Timothy P. Heaton | Of Counsel | 46.7 | $600 | $27,660.00 |
| SRH | Stacey R. Hovan | Of Counsel | 339.4 | $470 | $159,518.00 |
| AMS | Anup M. Shah | Of Counsel | 1.6 | $445 | $712.00 |
| DS | Daniel Sharpe | Associate | 136.5 | $440 | $60,060.00 |
| CF | Christopher Franich | Associate | 131.1 | $440 | $57,676.63 |
| JY | Jonathan Yee | Associate | 177.3 | $365 | $65,515.34 |
| YL | Yanni Lin | Associate | 64.3 | $332 | $21,383.00 |

| Initials | Name | Position | Hours | Rate | Amount |
|---|---|---|---|---|---|
| GEP | Gerald E. Porter | Associate | 15.8 | $330 | $5,214.00 |
| LUB/LB | Lauren U. Baker | Associate | 111.5 | $330 | $36,795.00 |
| SH | Sarah Holland | Associate | 127.4 | $330 | $42,042.00 |
| OF | Oscar Figueroa | Associate | 242.7 | $330 | $84,997.00 |
| GL | George Laiolo | Associate | 3.6 | $195 | $702.00 |
| MH | Matthew Hu | Paralegal | 3.5 | $255 | $892.50 |
| SBH | Sherrill Haupt | Paralegal | 9.9 | $195 | $1,933.50 |
| MK | Marika Kirtadze | Paralegal | 1.1 | $125 | $137.50 |
| PC | Peggy Sherry | Librarian | 9.5 | $225 | $2096.50 |
| JRC | James R. Calvert | Of Counsel | 6.7 | 390 | $2,613.00 |
| AE | Amanda Evanson | Attorney | 14.2 | 310 | $4,402.00 |
| ND | Natalie Day | Attorney | 45.7 | 285 | $13,098.00 |
| AG | Adam Gajadharsingh | Attorney | 0.8 | 265 | $212.00 |
| CLG | Contessa L. Glass | Tech. Coordinator | 1.0 | 230 | $230.00 |
| ME | Montserrat Esparza | Analyst | 1.2 | 195 | $234.00 |
| TAB | Tiffany A. Butler | Analyst | 1.4 | 195 | $273.00 |
| SS | Stephanie Salazar | Analyst | 0.5 | 195 | $97.50 |
| NM | Naomi Mesias Piano | Analyst | 0.3 | 195 | $58.50 |

Each of the above professionals from PSD's legal team has an hourly rate that is in the lower part of the range Whitewater admitted was reasonable for their personnel having corresponding levels of experience. PSD's counsel's rates are certainly not unreasonable: cases in this district have found that a rate between $505 and $775 was reasonable for a partner several years ago. *Deep Sky Software, Inc. v. Southwest Airlines Co.*, 2015 WL 10844231 (S.D.Cal. Aug. 19, 2015); *Zest IP Holdings, LLC v. Implant Direct Mfg., LLC*, 2014 WL 6851612 (S.D.Cal. Dec. 3, 2014). Indeed, another trial court within this district has found the rates for many of the time-biller listed below to be reasonable. *Flowrider Surf, Ltd. v. Pacific Surf Designs, Inc.* Case No. 15-CV-01879-BEN-BLM, ECF 316 (Finding reasonable the rates of Charanjit

Brahma, Justin Barnes, Tim Heaton, Stacy Hovan, Anup Shah, Dan Sharpe, Chris Franich, Gerry Porter, Mark Mao, Lauren Baker, and Sarah Holland).

As to the second measure of reasonableness, overall cost, the total amount requested for legal-related services by Whitewater was $1,900,000. ECF 168, ECF 179, ECF 191. For the individually-identified timekeepers, Whitewater spent a total of 3,865 hours on this litigation through August 15, 2019. The blended hourly rate for those timekeepers was approximately $505. For the unnamed "GT attorney's and staff" timekeepers, Whitewater spent an additional $86,308, or another 170 hours assuming the same blended rate. In sum, Whitewater staffed this case with approximately **4,035** billable hours at a blended hourly rate of approximately **$500**.

In contrast, for this same period plus extending three months beyond Whitewater's last accounting of fees, the total number of hours for all the professionals from PSD's legal team was **2,485** at a blended hourly rate of **$465**, for a total of $1,155,836.23—which is over 1,500 hours and **$740,000** less than Whitewater requested for the same time period.

In October of 2019, PSD hired Messrs. de la Cerra and Roberts to work on the appeal in this case. They won reversal on appeal, and then were hired as counsel at the trial court, with Mr. de la Cerra as lead counsel. de la Cerra Decl. ¶ 14. The billings of Messrs. de la Cerra and Roberts total $53,505.49, as evinced by the declaration of Manuel de la Cerra and the exhibit A5 thereto.   de la Cerra Decl. ¶ ¶ 16,17.

The total billable fees incurred by PSD through the filing of this motion are as follows:

| Description | Amount |
|---|---|
| Troutman Attorney and Staff (Brahma Decl ¶¶3, 7-27, Ex. B1 pgs. 1-24) | $1,131,417.23 |
| Troutman eMerge Attorney and Staff (Brahma Decl ¶¶3, 28-34, Ex. B1 pgs. 25-32) | $21,218.00 |
| De la Cerra Law (de la Cerra Decl ¶16, Ex. A5) | $53,505.49 |
| Total Legal/Staff Fees | $1,206,140.72 |

## C. PSD Should be Awarded Related Nontaxable Expenses.

FRCP 54(d)(2)(A) provides for collection of "related nontaxable expenses" upon motion to the Court. The motion must "specify the judgment and the statute, rule, or other grounds entitling the movant to the award". FRCP 54(d)(2)(B)(ii). As with the attorney fees discussed above, the Employment Agreement provides for the recovery of "other costs incurred in that action … **in addition to** any other relief to which it or they may be **entitled**." de la Cerra Decl. Ex. A1 (Agreement ¶¶9, 10e) (emphasized). Sections 1032(b) and 1033.5 of the California Code of Civil Procedure outline the costs that a prevailing party is "entitled" to "as a matter of right" and grants this Court discretion to award those not otherwise addressed. §§1033.5(a),(b),(c)(4).[1]

---

[1] PSD files concurrently herewith a Bill of Costs with the Court Clerk under FRCP 54(d)(1). Related nontaxable expenses allowed under FRCP 54(d)(2) through California Code of Civil Procedure §1033.5 are broader in some respects than those allowed under FRCP 54(d)(1) as controlled by 28 U.S.C. §1920. PSD has made a good faith effort to bifurcate the expenses between those allowed under FRCP 54(d)(2), requested in this filing, and those allowed through FRCP 54(d)(1), requested in the concurrent filing. To the extent that bifurcation is in error, PSD reserves the right to request reconsideration of the costs/expenses under the correct Rule of Civil Procedure.

### i. __Attorney Travel and Accommodation__

Expenses incurred for an attorney to travel out of town are collectable under Cal. Code Of Civil Procedure §1033.5(a)(3)(c). Travel expenses awarded as costs to defendant include hotels, car rentals, gas, and parking. *Chaaban v. Wet Seal, Inc.* 203 Cal.App.4th 49 (2012). While §1033.5(a)(3)(c) is limited to travel expenses for depositions, §1033.5(c)(4) provides the trial court with discretion to assess items not specifically listed. This may be done if the expense is "reasonably necessary to the conduct of the litigation". §1033.5(c)(2). Trial courts have found that out-of-town travel for court proceedings can be recovered under California Code of Civil Procedure § 1033.5. *Page v. Something Weird Video,* 960 F.Supp. 1438, 1447 (C.D. Cal. 1996).

PSD incurred $21,840.26 in travel and accommodation expenses that were reasonably necessary to the conduct of this litigation. Brahma Decl. ¶36, Ex. B2.

### ii. __Copy Costs, and Trial Technology and Support__

California courts have interpreted California Code of Civil Procedure §1033.5 as encompassing costs incurred for trial technology technicians where those services "enhanced counsel's advocacy during the trial," so long as the costs were "reasonably necessary to the conduct of the litigation." *Bender v. Cty. of Los Angeles*, 217 Cal. App. 4th 968, 991 (2013) (awarding full amount incurred for trial technician); *Green v. County of Riverside*, 238 Cal. App. 4th 1363 (2015) (costs for the preparation and presentation of electronic evidence was reasonably helpful to aid jury; use of such technology, including technician to monitor equipment and quickly resolve any

glitches, was commonplace, if not expected by jurors.) Accordingly, PSD requests the exemplification and copy fees it incurred in the amount of $36,848.13, that were reasonably necessary to the conduct of this litigation. Brahma Decl. ¶37, Ex. B3.

### iii. <u>eDiscovery</u>

"[F]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case" are taxable. 28 U.S.C. §1920. Exemplification includes electronic copying. *Jardin v. DATAllegro, Inc.,* 2011 WL 4835742, *5 (S.D. Cal. Oct. 12, 2011). Exemplification further includes electronic discovery, including scanning, converting, Bates stamping, and otherwise producing documents in usable formats. *See Id.* at *8-9*; Linex Techs. v. Hewlett-Packard Co.*, No., 2014 WL 5494906, *6 (N.D. Cal. Oct. 30, 2014). PSD incurred exemplification fees, including eDiscovery, as a necessary part of this litigation. *See Tibble v. Edison Int'l*, 2011 WL 3759927, *7 (C.D. Cal. Aug. 22, 2011) (e-discovery expenses allowed under section 1920 where "Plaintiffs aggressively sought electronic files," and "Defendants were required to produce this electronically stored information"). Likewise, California courts have interpreted California Code of Civil Procedure §1033.5 to include recovery of eDiscovery. *Hooked Media Group Inc. v. Apple Inc.,* 55 Cal. App 5th 323, 353-354 (2020) (allowing $92,000 in eDiscovery expenses).

Accordingly, PSD requests the eDiscovery fees it incurred in the amount of $50,687.14, all of which was reasonably necessary to the conduct of this litigation. Brahma Decl. ¶38, Ex. B4.

#### iv.  **Court Report Fees**

California Code of Civil Procedure §1033.5(a)(11) allows for recovery of court reporter fees. PSD incurred $3142.40 in expenses for the Court reporter during trial. Brahma Decl. ¶39, Ex. B5. All of these expenses were reasonably necessary to the conduct of this litigation. *Id.*

#### v.  **Other Necessary Litigation Expenses**

PSD paid Whitewater's expert witnesses a total of $5725.00 in order to take their depositions, and this was reasonably necessary to the conduct of this litigation. Brahma Decl. ¶40, Ex. B6. Without deposing these witnesses, it would have been impossible to prepare for their testimony at trial.

PSD incurred $650.95 in expenses for couriers to delivery courtesy copies to the court and delivery of materials during trial. Brahma Decl. ¶41, Ex. B7. PSD also incurred $7,600.90 for video-related deposition costs, for deponents that ultimately testified at trial.  Brahma Decl. ¶42, Ex. B8.  All of these expenses were reasonably necessary to the conduct of this litigation. *Id.*

### D. PSD Should Be Awarded Its Rebuttal Expert Fees Incurred to Refute Whitewater's Expert Testimony on Its Baseless Claims.

After a four-day bench trial involving several Whitewater witnesses, including expert witnesses, this Court found that Whitewater had presented no evidence supporting its position on damages:

> "Here, no evidence was presented of Whitewater's loss from not having ownership of the patents. In fact, PSD was unable to find a single buyer for its patented rides. (Yeh Testimony at 352.) Wave Loch was also

- 13 –

unable to find a buyer for a similar half-pipe ride. (Lochtefeld Testimony at 528; Myrman Testimony at 110.) And Plaintiff did not present any evidence that it could have found a buyer had it owned the patents. (See Yeh Testimony at 352; Lochtefeld Testimony at 528.) In addition, no evidence was adduced showing Defendants were unjustly enriched. Indeed, the evidence showed Defendants were unable to make a single sale of the patented inventions. (Dr. Lewis Testimony at 761–62.) Because Plaintiff has failed to establish damages on these grounds or entitlement to a reasonable royalty, the Court declines to award monetary damages." ECF 166, pgs. 23-24.

Whitewater hired Dr. Vigil as a damages expert and Dr. Stevich as a technical expert to gloss over this glaring lack of evidence. Dr. Vigil testified at trial that contractual damages were interchangeable with a reasonable royalty analysis, in view of Dr. Stevich's testimony, which together attempted to establish the comparability of the patents-at-issue to U.S. Patent 8,088,016. Trial Trans. Dr. Stevich at 630:6-637:14. But this Court rejected Whitewater's expert-based position as contrary to the evidence:

"Plaintiff seeks $1.8 million in reasonable royalty damages based on a hypothetical negotiation for a license fee paid by PSD to Whitewater to use the patented technology. (Testimony of Dr. Robert Vigil Testimony at 610–12; 642–44.) This hypothetical negotiation assumes PSD would have sought a license, and Whitewater would have granted such a license. In reality, Whitewater rarely licenses intellectual property. (Alleshouse Testimony at 302–04; Chutter Testimony at 61.)" ECF 166, pg. 23.

Whitewater ignored the lack of evidence supporting its position and instead hired experts to submit factually baseless reports and testimony. This unfairly forced PSD to hire rebuttal experts to respond to Whitewater's baseless claims. PSD hired Mr. de la Cerra as a rebuttal expert to analyze and respond to Dr. Stevich's opinions,

- 14 –

and hired Mr. Lewis as a rebuttal expert on damages. Mr. Lewis pointed out that the proper forms of damages for a breach of contract – i.e., expectation damages and unjust enrichment – would not be appropriate here, in view of the evidence including the testimony of Mr. de la Cerra. Trial Trans. Mr Lewis at 749:17-751:21. The Court ultimately agreed with PSD's rebuttal experts, finding:

> "This case is therefore better suited to a damages calculation based on traditional concepts of compensatory damages and unjust enrichment. (Testimony of Dr. Justin Lewis ("Dr. Lewis Testimony") at 749–51.) The goal of compensatory damages is to put the plaintiff "in as good a position as he or she would have occupied" if the defendant had not breached the contract. *Lewis Jorge Construction Management, Inc. v. Pomona Unified School Dist.*, 34 Cal. 4th 960, 967 (2004)." *Id.*

These Court findings reflect the reasoning of PSD's rebuttal experts and thus confirm that their testimony was critical in PSD's defense against Whitewater's factually baseless damage assertions.

A defendant such as PSD is properly awarded its rebuttal expert fees when they are reasonably incurred to defend against a baseless claim, like Whitewater's damages claim. This is especially true where the baseless claim was part of a bad faith strategy of repeatedly pursuing baseless claims against a competitor. *Accord*, *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 23 F.3d 374, 378 (Fed. Cir. 1994); *Takeda Chem. Indus., Ltd. v. Mylan Labs., Inc.*, 549 F.3d 1381, 1391 (Fed. Cir. 2008) (A "district court may invoke its inherent power to impose sanctions in the form of reasonable expert fees in excess of what is provided for by statute."). In *MarcTec*, the court found that "(1) '[e]xpert fees are recoverable in patent cases where, as here, there was bad

faith, such as the filing of a frivolous action'; and (2) '[b]ecause of MarcTec's bad faith in bringing and pressing this suit when it had no basis for asserting infringement.'" *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907, 921 (Fed. Cir. 2012).

Just as in *MarcTec*, PSD was forced to incur expert witness fees to rebut the testimony of Whitewaters' expert witnesses, which Whitewater should have never proffered because it was legally and factually baseless. As this Court noted, there was no evidence "of Whitewater's loss from not having ownership of the patents" and "no evidence [] showing Defendants were unjustly enriched." ECF 166, pgs. 23-24. This Court should exercise its inherent authority to allow PSD to recoup its expert fees incurred to rebut Whitewater's abuse of the judicial process by using paid experts to proffer its factually baseless positions. Otherwise PSD will not be "in as good a position as he or she would have occupied" if Whitewater had not asserted baseless claims against PSD under the Agreement. *Accord*, ECF 166, pg. 23.

Moreover, it is important for the Court to understand that this case is just one part of a concerted effort by Whitewater to use baseless litigation to "squash" and "starve out" PSD before they could become a serious threat.[2] Whitewater's scheme began on May 1, 2014 with *Flowrider Surf, LTD. v. Pacific Surf Designs et al.*, Case

---

[2] Attached is the Declaration of Joseph E. Thomas, PSD's lead trial attorney in *Whitewater West Industries, Inc. v. Pacific Surf Designs et al*. Case No 17-cv-01118-BEN-BLM. Thomas Decl. ¶3. This declaration includes two exhibits admitted at trial that reveal Whitewater's efforts to "squash" and "starve out" PSD because PSD was severely undercutting Whitewater's pricing. Thomas Decl. ¶¶4-6, Ex. D1, Ex. D2.

No. 14-cv-1110-GPC-BLM, which was dismissed about two months later.[3] Then Whitewater filed another suit, *Flowrider Surf, LTD. et al v. Pacific Surf Designs*, Case No. 15-cv-01879-BEN-BLM, which Judge Benitez dismissed on May 26, 2017. Whitewater then filed a third lawsuit for patent infringement. *Whitewater West Industries, Inc. v. Pacific Surf Designs et al*. Case No 17-cv-01118-BEN-BLM. In December of 2019 that case went to trial and the jury found overwhelmingly in favor for PSD. *Id*. Judge Benitez has already found the 15-cv-1879 case exceptional and awarded $556,233 in fees. That Court is currently considering PSD's motion designating the 14-cv-1110 and 17-cv-01118 litigations to be exceptional as well.[4]

Context shows that Whitewater's baseless damage claim in this case was simply part of its larger bad faith strategy to drive PSD out of business by repeatedly pursuing baseless and costly litigation against PSD, which has comparatively meager resources. Even though Whitewater has lost every case against PSD, its war of attrition through abuse of the judicial system has so far been quite successful, costing PSD over $6,000,000 to defend itself against Whitewater's baseless claims. Whitewater should be forced to internalize whatever of these unjustly-incurred costs the law allows.

For example, where the non-prevailing party acted fraudulently, or simply in bad faith, the law permits the Court to invoke its inherent power "to impose sanctions

---

[3] Flowrider Surf, Ltd. is a wholly owned subsidiary of Whitewater.

[4] PSD has sought $4,142,351 in the 17-cv-01118 matter; *s*ee ECF 382 (1/14/2021 Supp. Motion for Fees). PSD was awarded $556,233 in the 15-cv-1879 matter; *see* ECF 317 (9/30/20 Order).

in the form of reasonable expert fees in excess of what is provided for by statute". *Takeda*, 549 F.3d at 1391; *see iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1380 (Fed. Cir. 2011); *see also, Mathis v. Spears*, 857 F.2d 749, 759 (Fed. Cir. 1988) ("full expert witness fees have been awarded, without specific statutory authorization, upon a finding of bad faith"). The use of this inherent power is appropriate in cases where there is "a finding of fraud or abuse of the judicial process." *Amsted*, 23 F.3d at 378. Even where the "conduct did not amount to fraud, courts may use sanctions in cases involving bad faith that cannot be otherwise reached by rules or statutes." *Takeda*, 549 F.3d at 1391; *see also, Rosco, Inc. v. Mirror Lite Co.*, 2009 WL 3587344, *3 (E.D. N.Y. 2009) (awarding damages expert fees); *Kowalski v. Mommy Gina Tuna Resources*, 2009 WL 1649732, *2 (D. Haw. 2009) (same); *SunTiger Inc. v. Telebrands Advertising Corp.*, 73 U.S.P.Q.2d 1730, 2004 WL 3217731 (E.D. Va. 2004) (same).

An award of PSD's expert fees is clearly appropriate here, because PSD incurred those fees to rebut Whitewater's factually and legally baseless expert testimony, which Whitewater promulgated as part of its bad faith scheme of vexatious litigation. The rebuttal expert fees[5] improperly necessitated by Whitewater's abusive litigation tactics are summarized here:

---

[5] The expert fees may also be collectable under the parties' contract which provides "the successful or prevailing party shall be entitled to recover reasonable attorneys' fees and other costs incurred in that action or proceeding … **in addition to** any other relief to which it or they may be **entitled**.". de la Cerra Decl. Ex. A1 (Agreement ¶9) (emphasized).

| Description | Amount |
| --- | --- |
| Lewis Expert Fees (Lewis Decl. ¶5, Ex. C2) | $187,155.62 |
| De la Cerra Expert Fees (de la Cerra Decl. ¶8, Ex. A4) | $37,486.24 |
| Total Expert Fees | $224,641.86 |

### E. Whitewater's Bad Faith Included Misleading this Court on Two Key Points That it Conceded on Appeal, Resulting in Reversal.

PSD should be awarded at least its expert fees for the related reason that Whitewater made two critical false assertions to this Court that it later conceded when pressed by the Court of Appeals. First, Whitewater asserted in its trial brief that "Mr. Alleshouse's own communications with Mr. Yeh demonstrate that he began to conceive of the inventions at issue **while still employed by Wave Loch**." ECF 144, pg. 11 (Whitewater Trial Brief) emphasis in original. This was a misleading statement of law, as well as an unsupported statement of fact. Legally, conception does not occur as a process, but as a specific endpoint in time, "when the inventor has a specific, settled idea, a particular solution to the problem at hand*." Burroughs Wellcome Co. v. Barr Labs., Inc.*, 40 F.3d 1223, 1228 (Fed. Cir. 1994). And the facts clearly did not support Whitewater's allegation of pre-termination conception:

> "The evidence supports a finding that Mr. Alleshouse alone conceived of the inventions, and that Mr. Yeh's contributions occurred thereafter and are insufficient under the law. Mr. Alleshouse's notebook shows that by August 16, 2012, he had conceived of the half-pipe/quarter-pipe designs and adjustable nozzles—which ultimately resulted in the '689, '189, and '433 Patents." (ECF 166, pg. 21 (Court Findings)).

The fact has always been that Mr. Alleshouse conceived of these inventions after he left his employer. Whitewater never had contrary evidence to support its

legally-fallacious "began to conceive" argument, and Whitewater ultimately conceded this point on appeal. ECF 212, pg. 9 (Mandate).

Second, Whitewater used its factually baseless and legally erroneous assertion regarding pre-termination conception to misleadingly distinguish the case law directly on point. Whitewater distinguished *Applied Materials, Inc. v. Advanced Micro-Fabrication Equipment (Shanghai) Co.*, 630 F. Supp. 1084 (N.D. Cal. 2009) because, according to Whitewater, the Inventions Assignment Provision did not extend to "inventions conceived or reduced to practice after the termination of Alleshouse's employment." ECF 98, pgs. 9-10 (Whitewater Opp. to MSJ). That was nonsense. On its face the Assignment Provision extended to conception whenever in time, and thus necessarily included conception post-termination. But only at the last minute when challenged by the appellate panel during oral argument did Whitewater finally relent and concede this point. ECF 212, pg. 9 (Mandate).

The Federal Circuit relied on Whitewater's changed positions on these two fundamental points to reverse the entire case:

> "Relying on those now-undisputed premises, we conclude that the assignment provision is invalid under § 16600, and we reject Whitewater's argument that § 2870 saves the provision from invalidity under § 16600." ECF 212, pgs. 9-10 (Mandate).

But before Whitewater admitted these points on appeal, Whitewater had maintained its factually and legally baseless contractual assertions throughout the proceedings before this Court, forcing PSD to defend and then appeal a case that should never have been brought (like all the other baseless cases Whitewater has

launched against PSD). Whitewater's late concessions made all the difference before the Appeals Court, as they presumably would have before this Court had Whitewater been acting in good faith. If Whitewater had been honest with this Court from the beginning, this case would never have proceeded this far and at this expense.

Awarding PSD the expert fees it unjustly incurred to rebut Whitewater's baseless expert testimony is appropriate in view of Whitewater's course of bad faith litigation conduct in this case, as well as all the others. *Accord, e.g., Amsted,* 23 F.3d at 378 (expert fees may be awarded where "The 'entire course of conduct throughout the lawsuit evidenced bad faith and an attempt to perpetrate a fraud on the court.'"), s*ee also, Takeda*, 549 F.3d at 1391; *Mathis*, 857 F.2d at 759; *Rosco, Inc.*, 2009 WL 3587344, *3; *Kowalski*, 2009 WL 1649732, *2; *SunTiger Inc.*, 73 U.S.P.Q.2d 1730, 2004 WL 3217731.

### F. PSD is Entitled to Its Attorney Fees in Prevailing on the Inventorship Issue; Whitewater Has Already Conceded that This Was Part of the Dispute Under the Employment Agreement.

In case Whitewater attempts to exclude from the itemized charges the time and expenses incurred litigating the inventorship of Mr. Yeh, PSD notes that Whitewater has already conceded that these fees and expenses must be part of any fee award under the Employment Agreement. Whitewater affirmatively admitted this in its fee motion to the District Court, where Whitewater stated:

> "The only possible source of Whitewater's right to assert inventorship claims against Yeh was that Whitewater properly held an interest in the patents under the Agreement. *See*, 35 U.S.C. § 256 (correction of inventorship may be asserted only by a patent's "parties and assignees");

*In re Penrod*, 802 F.3d 1084, 1088 (9th Cir. 2015) (action is "on the contract" where "[t]he only possible source of that asserted right [to object] was the contract."). Thus, **the Agreement's attorney's fees provision encompasses all of Whitewater's claims**." ECF. 168 at pg. 5 (emphasized).

Whitewater reconfirmed this when it did not oppose PSD's claim for appeal-related fees and costs under the Employment Agreement which included fees and costs directed to the correction of inventorship issues. de la Cerra Decl. ¶15.

Whitewater was correct to concede this point because of the broad language of the fee provision in the Employment Agreement. California law expressly permits the recovery of attorney's fees on tort and statutory claims when a contract includes language that encompasses those claims. *In re Verbeck*, No. 16-40409 CN, 2017 WL 6389087, at *4 (Bankr. N.D. Cal. Dec. 13, 2017) ("Under [California Code of Civil Procedure] § 1021, parties may contract for the recovery of attorney's fees regardless of whether such litigation is premised on contract claims, tort claims, statutory claims, or otherwise, so long as the fee clause is sufficiently broad to encompass such claims" (listing cases)).

The Employment Agreement, which was written by Whitewater, broadly provides for prevailing party attorney's fees in "**any legal action** . . . brought for the enforcement of the Agreement, or **because of an alleged dispute, breach**, default, or misrepresentation **in connection with any of the provisions of this Agreement.**" (de la Cerra Decl. Ex. A1 (Agreement ¶9)). This is precisely the sort of broad language that under California law triggers recovery of attorney's fees for tort and statutory

claims related to contract claims. *Marsu, B.V. v. Walt Disney Co.,* 185 F.3d 932, 939 (9th Cir. 1999) (upholding award of attorney's fees on contract and tort claims where contract provided recovery of prevailing party fees for "**[a]ny dispute, difference, claim or counterclaim between the parties arising out of or in connection with this agreement** shall be submitted to state or federal court" (emphasis in original)).[6]

Each of Whitewater's claims, including the claim that Mr. Yeh was not an inventor, constituted a "legal action ... because of an alleged dispute ... in connection with" a provision of the Agreement. *Accord,* de la Cerra Decl. Ex. A1 (Agreement ¶9). Specifically, Whitewater's claims constituted a legal action arising from the assignment provision in the Employment Agreement, which required that Mr. Alleshouse assign all inventions "resulting from or suggested by Employee's work for the Company," to Wave Loch (and thus to Whitewater). de la Cerra Decl. Ex. A1 (Agreement ¶2(a)). But since Mr. Yeh was also listed as an inventor, Whitewater could not obtain ownership of the patents through paragraph 9 of the Employment Agreement without simultaneously removing Mr. Yeh as an inventor. Whitewater thus pursued its claims to remove Mr. Yeh as an inventor as a necessary corollary to its efforts to obtain the relief it sought under the Employment Agreement—namely a

---

[6] *See also Maynard v. BTI Grp., Inc.*, 216 Cal. App. 4th 984, 993 (2013) (affirming attorney's fees award on tort claim under contract providing for prevailing party fees for "any dispute" under the agreement); *Miske v. Coxeter*, 204 Cal. App. 4th 1249, 1259 (2012) ("where the language of the agreement broadly applies to '"any dispute"' under it, the attorney fee clause encompasses any conflict concerning the effect of the agreement, including a tort claim."); *Thompson v. Miller*, 112 Cal. App. 4th 327, 336-337 (2003) (reversing trial court and ordering award of fees on contract and tort claims where contract provided for recovery of fees on "any dispute under this agreement").

complete assignment of the patents to Whitewater. Whitewater initially was successful in its coordinated approach to obtain complete ownership of the patents at the District Court, but that success was completely reversed.

Both of the intertwined issues before this Court–i.e., the validity of the patent assignment provision and the status of Mr. Yeh as a named inventor–were resolved in PSD's favor. Whitewater has already admitted that PSD is entitled to recover all the reasonable fees and expenses it incurred in litigating these intertwined issues. The itemized entries shown in the concurrently-submitted declarations of Mr. de la Cerra, Mr. Brahma, and Mr. Lewis were necessitated by Whitewater's failed arguments misusing the Employment Agreement as false standing for its inventorship claims.

For at least the foregoing reasons, all costs and expenses incurred by PSD to successfully defend itself against Whitewater's claims in this case are covered by the contract fee-shifting provision and should be awarded.

### G. PSD is Entitled to Its Attorney Fees For Preparing and Prosecuting This Motion.

Under California law, a prevailing party entitled to its fees under a contract is also entitled to its fees for the time spent preparing and litigating the fee application. *See Serrano v. Unruh*, 32 Cal. 3d 621, 639 (Cal. 1982); *Shaw v. Credit Collection Serv.*, 2009 WL 4981620, *1 (S.D. Cal. Dec. 14, 2009) The invoices submitted with the declaration of Mr. de la Cerra include the time and expense incurred to-date for this motion. PSD will provide an updated fee total to include time spent on this motion as part of its reply to any opposition by Whitewater.

III.   **CONCLUSION**

PSD respectfully submits that the Court should follow California law and exercise its inherent authority by enforcing the bargain struck by the parties in their Employment Agreement and awarding PSD its attorney's fees and expenses reasonably incurred in this action, including PSD's rebuttal expert fees, in the amount of $1,557,277.36, as summarized here:

| Description | Amount | Support |
| --- | --- | --- |
| Legal Fees Troutman | $1,131,417.23 | Brahma Decl. ¶¶3, 7-27, Ex. B1 |
| Legal Fees eMerge | $21,280.00 | Brahma Decl. ¶¶3, 28-34, Ex. B1 |
| Legal Fees de la Cerra | $53505.49 | de la Cerra Decl. ¶16, Ex. A5 |
| Related Nontaxable Expenses | $126,494.78 | Brahma Decl. ¶¶3, 35-42, Exs. B2-B8 |
| Expert Fees de la Cerra | $37,486.24 | de la Cerra Decl. ¶¶8-9, Ex. A4 |
| Expert Fees Lewis | $187,155.62 | Lewis Decl. ¶5, Ex. C2 |
| Total | $1,557,277.36 | |

Executed on February 4, 2021       By:      /s/ Manuel de la Cerra
                                                      Manuel de la Cerra
                                                      John Roberts
                                                      *Attorneys for Defendants-Appellants*

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certified that a true and correct copy of the above and foregoing document has been served on February 4, 2021, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Civil Rule 5.4. Any counsel of record who have not consented to electronic service through the Court's CM/ECF system will be served by electronic mail, first class mail, facsimile, and/or overnight delivery.

*/s/ Manuel de la Cerra*
Manuel de la Cerra